**Garrett S. Ledgerwood**, OSB No. 143701
garrett.ledgerwood@millernash.com
MILLER NASH LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

**Darryl S. Laddin** (*pro hac vice pending*)
darryl.laddin@agg.com
**Frank N. White** (*pro hac vice pending*)
frank.white@agg.com
ARNALL GOLDEN GREGORY LLP
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363
Telephone:  404.873.8500
Facsimile:  404.873.8121

Attorneys for Plaintiff
American Express National Bank

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| AMERICAN EXPRESS NATIONAL BANK, | Case No. _____ |
| Plaintiff, | |
| v. | |
| MICHAEL MALEKZADEH and BETHANY MOCKERMAN, | **COMPLAINT** |
| Defendants. | |

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## COMPLAINT

Plaintiff American Express National Bank ("***American Express***"), by and through its undersigned counsel, files this Complaint against Defendants Michael Malekzadeh and Bethany Mockerman and states as follows:

### The Parties, Jurisdiction and Venue

1.      Plaintiff American Express is a national bank with its principal place of business located in the state of Utah.

2.      Defendant Michael Malekzadeh ("***Malekzadeh***") is an individual and, upon information and belief, a citizen and resident of Eugene, Lane County, Oregon, and is subject to the jurisdiction of this Court.

3.      Defendant Bethany Mockerman ("***Mockerman***") is an individual and, upon information and belief, a citizen and resident of Eugene, Lane County, Oregon, and is subject to the jurisdiction of this Court.

4.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1), which confers original jurisdiction of civil actions in a federal district court where, as here, the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), given that both of the Defendants reside in this judicial district, and 28 U.S.C. § 1391(b)(2), given that substantial parts of the events giving rise to the claims herein occurred in this judicial district.

### Background Facts

6.      American Express brings this action to collect unpaid balances that are past due and owing on various credit card accounts that American Express issued either to Malekzadeh

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

personally, or to Malekzadeh's former business, Zadeh Kicks LLC ("***Zadeh Kicks***"), which is now defunct, insolvent and the subject of a receivership action pending in the Circuit Court for the State of Oregon for Lane County (Case No. 22-CV-16510) (the "***Oregon Receivership Proceeding***").

7.  Zadeh Kicks held itself out as a premium-brand sneaker resale business that engaged, largely or primarily, in presales to customers of yet-to-be-released sneakers – *i.e.*, customers could pre-order and pay, weeks or months in advance, for sneaker models before they were even released by manufacturers such as Nike, which orders Zadeh Kicks would then be obligated to source, fulfill and ship to customers when the sneakers were in fact released by the manufacturers.

8.  It is unclear through what means, legitimate or otherwise, Zadeh Kicks was able to guarantee access to such pre-release sneakers in order to fulfill voluminous preorders.

9.  At all times relevant to this Complaint, Malekzadeh was the sole owner and Chief Executive Officer of Zadeh Kicks.

10.  At all times relevant to this Complaint, Mockerman was the Chief Financial Officer of Zadeh Kicks. On information and belief, Mockerman also was and is Malekzadeh's romantic partner and fiancée.

11.  The following "American Express" credit card accounts are the subject of this action:

(a)  an American Express Business Plum Card account ending in 2-21003 (the "***Plum Card Account***") issued by American Express to Zadeh Kicks, on which account Malekzadeh was the individual designated to be the Basic Cardmember (*i.e.*, the primary card holder) responsible for administration and proper use of the account, for receipt of monthly billing statements on the account, and (as set forth more fully below) to be jointly and severally liable, along with Zadeh

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Kicks, for any and all charges placed on the account; and

(b)   an American Express Business Gold Rewards Card account ending in 3-14001 (the "**Business Gold Card Account**") issued by American Express to Zadeh Kicks, on which account Malekzadeh was the individual designated to be the Basic Cardmember responsible for administration and proper use of the account, for receipt of monthly billing statements on the account, and (as set forth more fully below) to be jointly and severally liable, along with Zadeh Kicks, for any and all charges placed on the account; and

(c) an American Express Blue Cash Everyday Card account ending in 1-11009 (the "**Blue Cash Card Account**") issued by American Express to Mockerman directly and in her personal capacity.

In addition to the foregoing accounts that are directly at issue in this action, American Express also issued an American Express Schwab Platinum Card account ending in 8-61006 to Malekzadeh directly and in his personal capacity.

## <u>COUNT I</u>
### (BREACH OF CONTRACT – PLUM CARD ACCOUNT - MALEKZADEH)

12.    American Express re-alleges and incorporates its allegations contained in paragraphs 1 through 11 above as if fully set forth herein.

13.    In connection with the issuance of the Plum Card Account, both Zadeh Kicks and Malekzadeh entered into a valid contract with American Express known as the Cardmember Agreement (the "**Plum Card CMA**"). The Plum Card CMA governs, among other things, all use of and liability for charges incurred on the Plum Card Account, and expressly provides that Malekzadeh, as the designated Basic Cardmember on the Plum Card Account, is directly, personally and (with Zadeh Kicks) jointly and severally liable to American Express for any and all charges incurred on the account, regardless of the purpose of the charge, and expressly

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

including both unpaid charges on any cards issued to Malekzadeh himself, and all unpaid charges incurred by any additional cardholders on that account. A true, complete, and accurate copy of the Plum Card CMA is attached to this Complaint as **Exhibit A** and incorporated herein by reference.

14.     The Plum Card CMA also provides that Malekzadeh is liable for and obligated to pay all reasonable costs, including attorneys' fees, that American Express incurs in order to collect amounts owed on the Plum Card Account.

15.     American Express has fully performed all of its obligations under the Plum Card CMA.

16.     As of the filing of this Complaint, charges incurred but past due and unpaid on the Plum Card Account, and as required under the Plum Card CMA, total no less than $1,314,708.59 in the aggregate. In addition, Zadeh Kicks is now defunct, insolvent, the subject of the Oregon Receivership Proceeding, and unlikely ever to be the source of payment of past due obligations on the Plum Card Account.

17.     As a result of Zadeh Kicks' and Malekzadeh's breach of the Plum Card CMA, Malekzadeh is accordingly liable to American Express for no less than $1,314,708.59 in compensatory damages, plus applicable interest as provided in that contract, attorneys' fees and other costs of collection.

<u>COUNT II</u>
**(BREACH OF CONTRACT – BUSINESS GOLD CARD ACCOUNT - MALEKZADEH)**

18.     American Express re-alleges and incorporates its allegations contained in paragraphs 1 through 11 above as if fully set forth herein.

19.     In connection with the issuance of the Business Gold Card Account, both Zadeh Kicks and Malekzadeh entered into a valid contract with American Express known as the Cardmember Agreement (the "***Business Gold Card CMA***"). The Business Gold Card CMA

Page 5 - Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

governs, among other things, all use of and liability for charges incurred on the Business Gold Card Account, and expressly provides that Malekzadeh, as the designated Basic Cardmember on the Business Gold Card Account, is directly, personally and (with Zadeh Kicks) jointly and severally liable to American Express for any and all charges incurred on the account, regardless of the purpose of the charge, and expressly including both unpaid charges on any cards issued to Malekzadeh himself, and all unpaid charges incurred by any additional cardholders on that account. A true, complete, and accurate copy of the Business Gold Card CMA is attached to this Complaint as **Exhibit B** and incorporated herein by reference.

20.     The Business Gold Card CMA also provides that Malekzadeh is liable for and obligated to pay all reasonable costs, including attorneys' fees, that American Express incurs in order to collect amounts owed on the Plum Card Account.

21.     American Express has fully performed all of its obligations under the Business Gold Card CMA.

22.     As of the filing of this Complaint, charges incurred but past due and unpaid on the Business Gold Card Account, and as required under the Business Gold Card CMA, total no less than $712,064.96 in the aggregate. In addition, Zadeh Kicks is now defunct, insolvent, the subject of the Oregon Receivership Proceeding, and unlikely ever to be the source of payment of past due obligations on the Business Gold Card Account.

23.     As a result of Zadeh Kicks' and Malekzadeh's breach of the Business Gold Card CMA, Malekzadeh is accordingly liable to American Express for no less than $712,064.96 in compensatory damages, plus applicable interest as provided in that contract, attorneys' fees and other costs of collection.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## COUNT III
## (BREACH OF CONTRACT – BLUE CASH CARD ACCOUNT - MOCKERMAN)

24.     American Express re-alleges and incorporates its allegations contained in paragraphs 1 through 11 above as if fully set forth herein.

25.     In connection with the issuance of the Blue Cash Card Account, Mockerman entered into a valid contract with American Express known as the Cardmember Agreement (the "***Blue Cash Card CMA***"). The Blue Cash Card CMA governs, among other things, all use of and liability for charges incurred on the Blue Cash Card Account, and expressly provides that Mockerman is obligated to pay any and all charges placed on the account, including charges made by Mockerman herself, charges that Mockerman may have allowed other people to make, and charges made or permitted by the holders of any additional cards requested to be issued on the account. A true, complete, and accurate copy of the Blue Cash Card CMA is attached to this Complaint as **Exhibit C** and incorporated herein by reference.

26.     The Blue Cash Card CMA also provides that Mockerman is liable for and obligated to pay all reasonable costs, including attorneys' fees that American Express incurs in order to collect amounts owed on the Blue Cash Card Account.

27.     American Express has fully performed all of its obligations under the Blue Cash Card CMA.

28.     As of the filing of this Complaint, charges incurred but past due and unpaid by Mockerman on the Blue Cash Card Account, and as required under the Blue Cash Card CMA, total no less than $3,000.00 in the aggregate.

29.     As a result of her breach of the Blue Cash Card CMA, Mockerman is accordingly liable to American Express for no less than $3,000.00 in compensatory damages, plus applicable interest as provided in that contract, attorneys' fees and other costs of collection

Page 7 - Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## COUNT IV
### (FRAUD – MALEKZADEH AND MOCKERMAN)

30.     American Express re-alleges and incorporates its allegations contained in paragraphs 1 through 23 above as if fully set forth herein.

31.     In the ordinary course of its business, American Express conducts credit reviews and financial-risk analyses on its account-holder customers, and assesses customer requests for credit-line increases.

32.     Prior to mid-March of 2022, Zadeh Kicks was purchasing inventory from vendors using, and otherwise incurring charges and obtaining credit from American Express on, the Plum Card Account and the Business Gold Card Account, but subject to a maximum credit limit of $1 Million that American Express had established previously.

33.     Beginning in mid-to-late 2021, Zadeh Kicks, through Malekzadeh and Mockerman, requested that its aggregate credit limit on the Plum Card Account and the Business Gold Card Account be increased above the then-imposed $1 Million credit limit, citing business expansion, increased sales volume and the need to substantially ramp up purchases of inventory.

34.     Zadeh Kicks' request for a material increase in its credit limit initiated American Express's regular underwriting and credit review process.   Through several rounds of communications with Malekzadeh and Mockerman, American Express requested financial information, tax returns and various other documentation in order to consider Zadeh Kicks' requested credit limit increase.

35.     Among the materials provided to American Express by Malekzadeh and Mockerman during this underwriting and risk-analysis process were company-prepared financial statements for Zadeh Kicks for the year ending December 31, 2021 (the "*2021 Zadeh Financial Statement*"), which were provided to American Express on or about February 22, 2022.

Page 8 - Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Malekzadeh, the designated Basic Cardmember and personally liable individual on both accounts, also provided a Personal Financial Statement ("***PFS***") to American Express, among other materials and information.

36.     On information and belief, Malekzadeh and Mockerman, in their respective positions as Chief Executive Officer and Chief Financial Officer of Zadeh Kicks, were solely and entirely responsible for preparation of the 2021 Zadeh Financial Statement, and Malekzadeh was personally responsible for preparation of his PFS. In addition, Malekzadeh and Mockerman prepared these documents for the specific purpose of providing them to creditors, including to American Express in connection with its review of Zadeh Kicks' request for an increased credit limit on the Plum Card Account and the Business Gold Card Account.

37.     The 2021 Zadeh Financial Statement reflected, among other details, that the company's revenues during calendar year 2021 had exceeded $304.9 Million, that its net income had exceeded $17.4 Million, that it had cash on hand of over $9.3 Million, and that the company had an aggregate tangible net worth (total assets less total liabilities) as of December 31, 2021 of over $26.1 Million.  The PFS provided to American Express by Malekzadeh reflected, among other details, that Malekzadeh had a total, personal net worth of over $7.7 Million.

38.     Following its ordinary procedure for underwriting credit-line increases, and in specific and reasonable reliance upon the financial documentation provided by Malekzadeh and Mockerman, American Express agreed on or about March 28, 2022 to raise the aggregate credit limit on the Plum Card Account and the Business Gold Card Account from $1 Million to $2 Million.

39.     As revealed by the series of events that followed quickly thereafter, however, the representations of fact contained in the financial documentation provided to American Express by

Page 9 - Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Malekzadeh and Mockerman, and specifically the information in the 2021 Zadeh Financial Statement and the PFS, were materially false and misleading, if not entirely fabricated by Malekzadeh and Mockerman for the specific purpose of deceiving American Express.

40.    Hidden from American Express in February of 2022, in fact, and even more so into March of 2022, Zadeh Kicks was in significant financial distress, had sold an enormous volume of paid merchandise pre-orders to customers that it could never possibly fulfill, was otherwise unable to meet its business obligations as they came due, and had unsatisfied liabilities to customers, vendors and others that vastly exceeded the sum of its inventory and other assets.

41.    On April 29, 2022, only about nine weeks after Malekzadeh and Mockerman provided the 2021 Zadeh Financial Statement and PFS to American Express, and only about four weeks after American Express agreed to raise its credit limit in specific reliance on those documents, Zadeh Kicks effectively conceded its inability to continue to fulfill customer obligations when it ceased accepting new orders from customers altogether.

42.    On May 19, 2022, with its financial collapse hopelessly irreversible and no hope of satisfying multiple millions of dollars in outstanding obligations, Zadeh Kicks initiated the Oregon Receivership Proceeding, and a receiver was appointed on May 20, 2022, to administer a liquidation of the company's assets and a process for addressing creditor claims.

43.    At no point between their submission of financial documentation to American Express prior to and in February of 2022 and the complete cessation of the company's business in May of 2022 did Malekzadeh or Mockerman ever advise American Express of the true state of Zadeh Kicks' financial affairs, or indicate that any of the documentation previously provided to American Express for purposes of its underwriting and risk analysis was not (or at least, was no longer) even remotely true and accurate.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

44.     Over the period between their provision of the 2021 Zadeh Financial Statement and the PFS to American Express and early May of 2022, when Zadeh Kicks effectively ceased operations altogether, Malekzadeh and Mockerman incurred additional charges on the Plum Card Account and the Business Gold Card Account totaling no less than $2,026,773.55, which charges are now past due and unpaid, and which are unlikely ever to be paid to any material extent from the assets of Zadeh Kicks or in connection with the Oregon Receivership Proceeding.

45.     Had the 2021 Zadeh Financial Statement and the PFS that Malekzadeh and Mockerman provided to American Express accurately reflected the dire state of Zadeh Kick's financial status at that time, and other relevant financial information that American Express otherwise had no reasonable way of learning or verifying, then not only would American Express have refused to increase the credit limits on the Plum Card Account and the Business Gold Card Account by an additional $1 Million of exposure, but use of both of those accounts would have been immediately frozen or terminated by American Express, such that no additional charges could have been incurred on the accounts from that point forward.

46.     The 2021 Zadeh Financial Statement was made and published by Malekzadeh and Mockerman with the intent to deceive American Express.

47.     The PFS was made and published by Malekzadeh with intent to deceive American Express.

48.     Accordingly, and as a direct and proximate result of its reasonable reliance on the misrepresentations and/or omissions of material fact in the 2021 Zadeh Financial Statement, the PFS and other documentation prepared and provided by Malekzadeh and Mockerman, American Express has been damaged in the sum of no less than the $2,026,773.55 in additional and unpaid charges that they subsequently placed on the Plum Card Account and the Business Gold Card

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Account.

49.     Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, American Express is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

## COUNT V
### (ATTACHMENT - MALEKZADEH)

50.     American Express re-alleges and incorporates its allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

51.     Malekzadeh operated Zadeh Kicks as a Ponzi scheme, for the purpose of defrauding its customers. As its ordinary business practice, Zadeh Kicks obtained preorders from its national customer base for limited edition sneakers that were yet to be released. Zadeh Kicks continued its preorder practice up until the eve of its receivership filing, leaving its customers owed millions of dollars. Malekzadeh was the controlling officer and member of Zadeh Kicks.

52.     On information and belief, Malekzadeh used the proceeds of customer preorders to fund his extravagant lifestyle, including the purchase of luxury automobiles and other luxury goods and services, payment of exorbitant salaries and distributions of assets by Zadeh Kicks to himself, and other misuse of his ill-gotten gains to be established in the course of discovery.

53.     As a consequence of his activities at Zadeh Kicks, Malekzadeh is the subject of an ongoing criminal investigation by the Federal Bureau of Investigation, as well as, on information and belief, an investigation by the appointed receiver in the Oregon Receivership Proceeding.

54.     Since the failure of Zadeh Kicks, Malekzadeh has begun selling off assets,

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

including his luxury cars, as reported by the *Register Guard*.

55.     According to the PFS provided by Malekzadeh to American Express in connection with the request for an increased limit on the Zadeh Kicks business credit cards, Malekzadeh owned the following assets as of March 2022, among others:

(a)     Unencumbered cash in the sum of $141,000.00;

(b)     A life insurance policy valued at $25,000.00;

(c)     Luxury automobiles (including, without limitation, a Porsche, a Rolls Royce Cullinan and a Lamborghini) valued at $3,810,000.00, on which Malekzadeh represented that he owed loan balances amounting to only $684,094.77; and

(d)     "Other assets" amounting to $4,475,000.00;

all of which, net of his total liabilities, left him with a supposed personal net worth of $7,767,000.00.  In addition, Malekzadeh represented in the PFS that he had an annual salary of $112,000.00, and annual dividend or investment income (presumably transfers or distributions of supposed equity in Zadeh Kicks) amounting to $4,504,000.00, amounting to total annual income of in excess of $4,500,000.00.

56.     As a result of his mounting criminal and civil liability and as evidenced by his ongoing liquidation of personal assets and his activities as officer and manager of Zadeh Kicks, there is a substantial danger that Malekzadeh is engaging in conduct that would place his assets in danger of concealment, removal from the state, or transfer to an innocent purchaser, including recipients of potential fraudulent transfers.

57.     If Malekzadeh's assets are not attached pending the outcome of this action, American Express will be irreparably injured.

58.     There is no reasonable probability that Malekzadeh can establish a successful

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

defense to American Express's claims for breach of contract.

59.    The amounts owing to American Express are not secured by any mortgage, lien, or pledge, or if so secured, have been rendered nugatory by the acts of Malekzadeh.

60.    American Express's claims for breach of contract under the Plum Card CMA and the Business Gold Card CMA are not claims based upon a consumer transaction.

61.    American Express does not seek attachment over any consumer goods as defined in ORCP 83.

### RESERVATION OF RIGHTS AND ASSERTION OF ADDITIONAL CLAIMS

62.    While the claims asserted in Counts I through V above include all causes of action against the Defendants that American Express has specific facts to support as of the filing of this Complaint, American Express has reason to believe that, and intends fully to investigate whether, facts relating to the following give rise to additional causes of action by American Express against the Defendants, and perhaps others acting in concert with them:

(a)    the Defendants' use of the various American Express credit card accounts at issue herein,

(b)    precisely when the operations and/or business model of Zadeh Kicks in fact began to constitute a Ponzi scheme (in which proceeds of paid pre-orders from new customers were instead used to fulfill orders of merchandise by earlier customers, requiring a constant influx of new orders to sustain order fulfillment), and

(c)    the Defendants' actions prior to and immediately after the collapse and cessation of business of Zadeh Kicks (including, without limitation, whether the Defendants were recipients of actual or constructive fraudulent transfers from Zadeh Kicks),

American Express accordingly reserves its rights to conduct discovery in this action aimed at

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

investigating the existence of facts supporting any additional causes of action, and if such facts are found to exist, to amend this Complaint to add such additional claims.

WHEREFORE, American Express respectfully requests that the Court:

(a)    enter judgment in favor of American Express, and against Malekzadeh, and award monetary damages to American Express in the aggregate amount of its damages caused by Malekzadeh's breaches of contract as set forth in Counts I and II above, to be determined at trial, but no less than $2,026,773.55; and

(b)    enter judgment in favor of American Express, and against Mockerman, and award monetary damages to American Express in the aggregate amount of its damages caused by Mockerman's breaches of contract as set forth in Count III above, to be determined at trial, but no less than $3,000.00; and

(c)    enter judgment in favor of American Express, and against Malekzadeh and Mockerman, jointly and severally, and award monetary damages to American Express in the aggregate amount of its damages caused by Malekzadeh's and Mockerman's fraud as set forth in Count IV above, to be determined at trial, but no less than $2,026,773.55, plus punitive damages; and

(d)    with respect to the fraud judgment, issue findings of fact consistent with 11 U.S.C. 523(a)(2); and

(e)    award American Express any interest on such principal balances that has accrued under the applicable contracts as of the date of entry of judgment, as well as any post-judgment interest that may accrue thereafter until such judgment is satisfied; and

(f)    allow American Express to attach Malekzadeh's assets as set forth in Count V

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

above; and

(g)    award American Express all reasonable costs, including attorneys' fees, that it has

or will have incurred in order to collect the amounts at issue in this Complaint; and

(h)    grant American Express such other and further relief as the Court deems just,

equitable, and proper.


DATED this 21st day of July 2022

MILLER NASH LLP

*/s/ Garrett S. Ledgerwood*
Garrett S. Ledgerwood (OSB# 143701)
Garrett.Ledgerwood@MillerNash.com
Phone: 503.205.5858


ARNALL GOLDEN GREGORY LLP

*/s/ Darryl S. Ladin*
Darryl S. Laddin (*pro hac vice pending*)
darryl.laddin@agg.com
Frank N. White (*pro hac vice pending*)
frank.white@agg.com
Phone: 404.873.8120

*Attorneys for Plaintiff American Express
National Bank*


4890-1285-6868.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## FAIR DEBT COLLECTION
## PRACTICES ACT NOTICE

**TO: BETHANY MOCKERMAN**

We are attempting to collect a debt on behalf of the Plaintiff (also referred to as the "creditor") named in the foregoing Summons and in the Complaint served on you with the Summons, and any information obtained will be used for that purpose. The debt described in the Complaint as the Blue Cash Card Account is owed to the Plaintiff and is subject to this notice. Under some circumstances, you may receive more than one copy of the Summons and Complaint. Unless you dispute the validity of the debt described in the Complaint as the Blue Cash Card Account, or any portion thereof, within 30 days after you first receive a copy of the Summons and Complaint, we will assume that debt to be valid. If you notify us in writing within 30 days after you first receive a copy of the Summons and Complaint that the debt described in the Complaint as the Blue Cash Card Account, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of the verification will be mailed to you. We will provide you with the name and address of the original creditor, if different from the Plaintiff, if you notify us in writing within 30 days after the date you first receive the Summons and Complaint that you request such information.

PLEASE BE ADVISED THAT NOTWITHSTANDING ANY NOTICE THAT YOU GIVE TO US DISPUTING THE VALIDITY OF THE DEBT DESCRIBED IN THE COMPLAINT AS THE BLUE CASH CARD ACCOUNT (OR ANY PORTION THEREOF) OR ANY NOTICE THAT YOU GIVE TO US REQUESTING INFORMATION REGARDING THE ORIGINAL CREDITOR (IF DIFFERENT FROM THE PLAINTIFF), YOU MUST RESPOND TO THE COMPLAINT IN THIS CASE IN THE MANNER AND WITHIN THE TIME PROVIDED BY LAW OR THE PLAINTIFF WILL WIN AUTOMATICALLY.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## Cardmember Agreement: Part 1 of 2

As of: 12/10/2019

**Plum Card**
**Cardmember Name:** MICHAEL MALEKZADEH

Company Name:ZADEH KICKS

Account Ending In: 21003

### Fees Table

Issuer: American Express National Bank

| Fees | |
|---|---|
| **Annual Membership Fee** | $350 |
| **Transaction Fees**<br>• Foreign Transaction | None |
| **Penalty Fees**<br>• Late Payment | $39 or **1.5%** of the past due amount, whichever is greater. If you do not pay for two billing periods in a row, the fee is the greater of **$39** or **2.99%** of the past due amount. |
| • Returned Payment | $39. |

Exhibit A - Page 1 of 12

## How Fees Work

| Fees | |
|---|---|
| **Annual Membership** | See the *Fees Table* on page 1 of Part 1. We will not charge for Additional Cards. |
| **Late Payment** | Unless you follow the terms of the Defer Pay Option (See *Defer Pay Option (Extra Days to Pay)* in Part 2 of this Agreement): |
| | $39 or 1.5% of the amount unpaid, whichever is greater, if you do not pay the entire Amount Due shown on your billing statement before the next Closing Date. |
| | For each following Closing Date that an amount past due remains unpaid, we may charge a fee of the greater of $39 or 2.99% of any amount past due. |
| **Returned Payment** | $39 if your payment is returned unpaid the first time we present it to your bank. |
| **Returned Check** | $38 if you use your card to cash a check at one of our approved locations and the check is returned unpaid. We will also charge you the unpaid amount. |
| **Foreign Transaction** | None |

**Part 1, Part 2 and any supplements or amendments make up your Cardmember Agreement.**

27781

## Notice of Updates to Additional Benefits of your Card

As described below, we will be making updates to your card benefits. These benefits are provided to you at no additional charge as part of your Card Membership. We encourage you to read this notice and file it for future reference. If you have any questions, please visit the website for each benefit below, or call the number on the back of your Card.

### Baggage Insurance Plan*

**Effective 1/1/2020**, Baggage Insurance Plan will no longer be provided on this Card Account. This means any eligible travel purchases made on or after **1/1/2020** will not be covered by Baggage Insurance Plan. Eligible travel purchases made prior to **1/1/2020** will still be covered by Baggage Insurance Plan.

*Baggage Insurance Plan is underwritten by AMEX Assurance Company and Tokio Marine Pacific Insurance Limited. Subject to additional terms, conditions and exclusions. For terms and conditions,please visit **americanexpress.com/bipterms**.

### Premium Roadside Assistance

**Effective 1/1/2020**, Premium Roadside Assistance will be discontinued and will no longer be a benefit provided on this Card Account. Premium Roadside Assistance can still be used until **12/31/2019**. For terms and conditions, please visit **americanexpress.com/raterms**.

### Travel Accident Insurance*

**Effective 1/1/2020**, Travel Accident Insurance will no longer be a benefit provided on this Card Account. This means any eligible travel purchases made on or after **1/1/2020** will not be covered by Travel Accident Insurance. Eligible travel purchases made prior to **1/1/2020** will still be covered by Travel Accident Insurance.

*Travel Accident Insurance is underwritten by AMEX Assurance Company and Tokio Marine Pacific Insurance Limited. Subject to additional terms, conditions and exclusions. For terms and conditions, please visit **americanexpress.com/talterms**.

### Extended Warranty*

For eligible purchases made on and after **1/1/2020** the following will occur:

- If the original manufacturer's warranty is less than one (1) year, we will match the length of that warranty.
- If the original manufacturer's warranty is between one (1) year and five (5) years, we will increase coverage to provide one (1) additional year of warranty.

For eligible purchases made on or after **8/1/2018** but prior to **1/1/2020** the following will occur:

- If the original manufacturer's warranty is less than two (2) years, we will match the length of that warranty.
- If the original manufacturer's warranty is between two (2) years and five (5) years, we will provide two (2) additional years of warranty**.

*Extended Warranty is underwritten by AMEX Assurance Company and Tokio Marine Pacific Insurance Limited. Subject to additional terms, conditions and exclusions. For terms and conditions, please visit **americanexpress.com/ewterms**.
**For residents of Indiana, Guam, Puerto Rico, and Northern Mariana Islands, your coverage will match the original warranty period for warranties of less than one (1) year or provide one (1) additional year if the warranty is between one (1) and five (5) years.

The benefit is limited to the actual amount charged to your Card for the item, up to a maximum of $10,000; not to exceed $50,000 per Card Member account per calendar year.

### Purchase Protection*

For eligible purchases made on and after **1/1/2020** the coverage duration on eligible purchases will be 90 days.
For eligible purchases made prior to **1/1/2020**, the coverage duration on eligible purchases will be 120 days**.
*Purchase Protection is underwritten by AMEX Assurance Company and Tokio Marine Pacific Insurance Limited. Subject to additional terms, conditions and exclusions. For terms and conditions, please visit **americanexpress.com/ppterms**.
**For residents of New York, Indiana, Guam, Puerto Rico, and Northern Mariana Islands coverage duration is 90 days.

This page intentionally left blank.

CMAEUDFYI000104

# Cardmember Agreement: Part 2 of 2

## How Your American Express Account Works

### Introduction

| | | |
|---|---|---|
| **About your Cardmember Agreement** | This document together with Part 1 make up the Cardmember Agreement (Agreement) for the Account identified on page 1 of Part 1. Any supplements or amendments are also part of the Agreement. | When you or an Additional Cardmember, as defined below, use the Account (or sign or keep a card), you agree to the terms of the Agreement. |
| **Words we use in the Agreement** | We, us, and our mean the issuer shown on page 1 of Part 1. Except as provided below, Basic Cardmember means the person who applied for this account or to whom we address billing statements. Company means the business for which the Account is established. You and your mean the Basic Cardmember and the Company. You agree, jointly and severally, to be bound by the terms of this Agreement. | Card means any card or other device that we issue to access your Account. A charge is any amount added to your Account, such as purchases and fees. A purchase is a charge for goods or services.<br><br>To pay by a certain date means to send your payment so that we receive it and credit it to your Account by that date (see About your payments in Part 2). |
| **Additional Cardmembers** | At your request, we may issue cards to Additional Cardmembers. They do not have accounts with us but they can use your Account subject to the terms of this Agreement.<br><br>You are responsible for all use of the Account by Additional Cardmembers and anyone they allow to use the Account. You must pay for all charges they make. You must share this agreement with all Additional Cardmembers.<br><br>You must tell Additional Cardmembers that:<br>• we may obtain, provide and use information about them.<br>• their use of the Account is subject to this Agreement. | You authorize us to give Additional Cardmembers information about the Account and to discuss it with them.<br><br>If you want to cancel an Additional Cardmember's right to use your Account (and cancel their card) you must tell us.<br><br>We may refer to Additional Card(s) and Additional Cardmember(s) as Employee Card(s) and Employee Cardmember(s). All terms and conditions that apply to Additional Cards also apply to Employee Cards. |
| **Replacement Basic Cardmember** | You must tell us if the Basic Cardmember is no longer an employee or officer of the Company or does not want to be the Basic Cardmember. In that case, you must either close the Account, or propose another person to replace the Basic Cardmember.<br><br>If you propose another person to replace the Basic Cardmember, that person must agree to assume the | obligations and liabilities of the Basic Cardmember under this Agreement, as of the date that such person replaces the Basic Cardmember. That person is subject to our approval.<br><br>You agree that the Basic Cardmember remains the Basic Cardmember until we approve a replacement or the Account is closed. |

### About using your card

| | | |
|---|---|---|
| **Using the card** | You may use the card to make purchases. You may also use the card at an ATM to get cash from a checking account you designate.<br><br>Each Cardmember acknowledges and agrees that cards are intended to be used for the Company's commercial or business purposes.<br><br>We decide whether to approve a charge based on how you spend and pay on this Account and other accounts you have with us and our affiliates. We also consider your credit history and your personal resources that we know about.<br><br>You may arrange for certain merchants and third parties to store your card number and expiration date, so that, for example: | • the merchant may charge your account at regular intervals; or<br>• you may make charges using that stored card information.<br><br>We may (but are not required to) tell these merchants and third parties if your expiration date or card number changes or if your account status is updated, including if your account is cancelled. If you do not want us to share your updated account information, please contact us using the number on the back of your card.<br><br>Keep your card safe and don't let anyone else use it. If your card is lost or stolen or your Account is being used without your permission, contact us right away. You may not use your Account for illegal activities. |
| **Promise to pay** | You promise to pay all charges, including:<br>• charges you make, even if you do not present your card or sign for the transaction,<br>• charges that other people make, whether or not you or an Additional Cardmember intend to let them use the Account, subject to applicable law, and<br>• charges that Additional Cardmembers make or permit others to make. | |
| **Declined transactions** | We may decline to authorize a charge. Reasons we may do this include suspected fraud and our assessment of your creditworthiness. This may occur even if your Account is not in default. | We are not responsible for any losses you incur if we do not authorize a charge. And we are not responsible if any merchant refuses to accept the card. |

## About your payments

| | | |
|---|---|---|
| When you must pay | Payment of the New Balance is due upon receipt of your statement unless you exercise the Defer Pay Option (Extra Days to Pay). Each statement states the time and manner by which you must make your payment for it to be credited as of the same day it is received. | Each statement also shows a Closing Date. The Closing Date is the last day of the billing period covered by the statement. Each Closing Date is about 30 days after the previous statement's Closing Date. Each statement also shows a Next Closing Date. |
| Plum Payment Options | Each month you can either receive an Early Pay Discount or choose to Defer Pay (take Extra Days to Pay). | |
| Early Pay Discount | If you pay the New Balance on a statement within 10 days after the Closing Date on that statement, then you will receive an Early Pay Discount (discount).<br><br>The amount of your discount depends on the amount of eligible purchases made during the billing period covered by that statement.<br><br>If the amount of eligible purchases on that statement is:<br>• $5,000 or less, you will receive a discount of 1% of that amount.<br>• more than $5,000, you will receive a discount of 2% of that amount.<br><br>Eligible purchases are purchases for goods and services minus returns and other credits. Eligible purchases do NOT include:<br><br>• previously deferred amounts,<br>• past due amounts,<br>• fees,<br>• purchases of traveler's checks,<br>• purchases or reloading of reloadable prepaid cards, or<br>• purchases of any cash equivalents. | Disputed charges do not become eligible purchases until the dispute has been resolved and the charges remain on the Account. You will receive the discount in the form of a statement credit on your next statement.<br><br>You will not receive the discount if the Account is closed or in default on the Closing Date of the billing period in which the credit is scheduled to be issued.<br><br>You will not receive the discount for purchases that are not for use or consumption by the Company in its ordinary course of business. |
| Defer Pay Option (Extra Days to Pay) | If you pay the Amount Due by the Please Pay By date, you can take Extra Days to Pay by deferring payment of the remainder of the New Balance on the current statement until the Please Pay By date on your next statement. If your account is current, your Amount Due is 10% of the balance from new activity on your billing statement plus the entire amount of any previously deferred balance. If your account is past due, the Amount Due is the entire New Balance on the statement and you cannot take Extra Days to Pay. | |
| How to make payments | Make payments to us in U.S. dollars with:<br>• a single check drawn on a U.S. bank, or<br>• a single negotiable instrument clearable through the U.S. banking system, for example a money order, or<br>• an electronic payment that can be cleared through the U.S. banking system.<br><br>When making a payment by mail:<br>• make a separate payment for each Account,<br>• mail your payment to the address shown on the payment coupon on the billing statement, and<br>• write the Account number on your check or negotiable instrument and include the payment coupon.<br><br>If your payment meets the above requirements, we will credit it to the Account as of the day we receive it, as long as we receive it by the time disclosed in the | billing statement. If we receive it after that time, we will credit the payment on the day after we receive it.<br><br>If your payment does not meet the above requirements, there may be a delay in crediting the Account. This may result in late fees and additional interest charges (see How Fees Work on page 2 of Part 1).<br><br>If we decide to accept a payment made in a foreign currency, we will choose a rate to convert your payment into U.S. dollars, unless the law requires us to use a particular rate.<br><br>If we process a late payment, a partial payment, or a payment marked with any restrictive language, that will have no effect on our rights and will not change this Agreement. |

## Other important information

| | | |
|---|---|---|
| Changing the Agreement | We may change the terms of, or add new terms to, this Agreement. We may apply any changed or new terms to any existing and future balances on the Account, subject to applicable law. | This written Agreement is a final expression of the agreement governing the Account. The written Agreement may not be contradicted by any alleged oral agreement. |
| Converting charges made in a foreign currency | If you make a charge in a foreign currency, AE Exposure Management Ltd. ("AEEML") will convert it into U.S. dollars on the date we or our agents process it, so that we bill you for the charge in U.S. dollars based upon this conversion. Unless a particular rate is required by law, AEEML will choose a conversion rate that is acceptable to us for that date. The rate AEEML uses is no more than the highest official rate published by a government agency or the highest interbank rate AEEML identifies from customary banking sources on the conversion date or the prior business day. This rate may differ from rates that are in effect on the date of your charge. We will bill charges converted by establishments (such as airlines) at the rates they use. | |

| | |
|---|---|
| **Changing your billing address** | You must notify us immediately if you change the:<br>• mailing address, email address, telephone numbers, or fax numbers that we use to send you billing statements, notices or other communications.<br>• legal entity of the Company.<br>• tax identification number. |
| **Closing your Account** | You may instruct us to close the Account by calling us or writing to us. The Basic Cardmember agrees to inform the Company prior to instructing us to do so.<br><br>The Basic Cardmember and the Company remain jointly and severally liable for all Charges made on the Account. | If an Annual Membership fee applies, we will refund this fee if you notify us that you are voluntarily closing your Account within 30 days of the Closing Date of the billing statement on which that fee appears. For cancellations after this 30 day period, the Annual Membership fee is non-refundable. If an Annual Membership fee applies to your Account, it is shown on page 1 and page 2 of Part 1 of the Cardmember Agreement.<br><br>If your billing address is in the Commonwealth of Massachusetts at the time you close your account, this policy will not apply to you. |
| **Cancelling or suspending your Account** | We may:<br>• cancel the Account.<br>• suspend the ability to make charges.<br>• cancel or suspend any feature on the Account.<br>• notify merchants that the Account has been cancelled or suspended.<br><br>If we do any of these, you must still pay us for all charges under the terms of this Agreement.<br><br>We may do any of these things at our discretion even if you pay on time and the Account is not in default. | If the Account is cancelled, you must destroy all cards.<br><br>We may agree to reinstate the Account after a cancellation. If we do this, we may:<br>• reinstate any cards, including additional cards.<br>• charge you any applicable fees, including annual fees.<br>• charge you a fee for reinstating the Account. |
| **About default** | We may consider your Account to be in default if:<br>• you violate a provision of this Agreement,<br>• you give us false information,<br>• you file for bankruptcy,<br>• you default under another agreement you have with us or an affiliate,<br>• you become incapacitated or die, or<br>• we believe you are unable or unwilling to pay your debts when due. | If we consider the Account in default, we may:<br>• suspend the ability to make charges.<br>• cancel or suspend any feature on the Account.<br>• cancel the Account and require you to pay the Account balance immediately. |
| **Collection costs** | You agree to pay all reasonable costs, including attorneys' fees, that we incur to collect amounts you owe or to protect ourselves from loss, harm or risk relating to default. | |
| **Credit reports** | You agree that we will obtain credit reports about you, investigate your ability to pay, and obtain information about you from other sources including information to verify and re-verify your employment and income. And you agree that we will use such information for any purposes (for example, marketing to you or evaluating you for a new account), subject to applicable law.<br><br>You agree that we will give information about the Account to credit reporting agencies. We will tell a credit reporting agency if you fail to comply with any term of this Agreement. This may have a negative impact on your credit report.<br><br>If you believe information we have given to a credit reporting agency is incorrect, write to us at: American Express Credit Bureau Unit, P.O. Box 981537, El Paso, TX 79998-1537. When you write to us, tell us the specific information you believe is incorrect. | |
| **Sending you notices** | We send you notices through the U.S. mail (postage prepaid) or electronically using the information in our records. Any notice we send you is deemed given when deposited in the U.S. mail or when sent electronically. Additionally, we may send notices and information to Additional Cardmembers at their request. | |
| **We may contact you** | **Servicing and Collections**<br>If we need to contact you to service your account or to collect amounts you owe, you authorize us (and our affiliates, agents and contractors, such as debt collection agencies and service providers) to contact you at any phone number or email address you provide, from which you contact us, or at which we believe we can reach you. We may contact you in any way, such as calling, texting, emailing, sending mobile application push notifications or using any other method of communication permitted by law. We may contact you using an automated dialer or prerecorded messages. We may contact you on a mobile, wireless or similar device, even if you are charged for it.<br><br>**Call monitoring**<br>We may monitor and record any calls between you and us. | |
| **About insurance products** | We or our affiliates may tell you about insurance and non-insurance products, services or features that may have a fee. One of our affiliates may act on behalf of a provider of these products. The affiliate may be compensated for this. The insurance products are not offered or sold by us or on our behalf. Our affiliates may get additional compensation when AMEX Assurance Company or another affiliate is the insurer or reinsurer. Compensation may influence what products and providers we or our affiliates tell you about.<br><br>We may share information about you with our affiliates so they can identify products that may interest you. We may be compensated for this information. | |

| | | |
|---|---|---|
| How we handle electronic debits from your checking account | When you pay us by check, you authorize us to electronically deduct the amount from your bank or other asset account.<br><br>We may process the check electronically by transmitting to your financial institution:<br><br>• the amount,<br>• the routing number,<br>• the account number, and<br>• the check serial number. | If we do this, your payment may be deducted from your bank or other asset account on the same day we receive your check. Also, you will not receive that cancelled check with your bank or asset account billing statement.<br><br>If we cannot collect the funds electronically, we may issue a draft against your bank or other asset account for the amount of the check. |
| Contactless Transactions | Cards issued on your Account may be equipped to enable you to make tap and pay charges using contactless technology. You can request Cards that are not equipped with this capability. Also, we may deactivate this capability at any time. | |
| Privacy Act of 1974 notice | Some federal agencies may accept the card under authority of statute. When you or Additional Cardmembers make charges at these agencies, we collect certain charge information. That information may be put to routine uses such as processing, billing and collections. It may also be aggregated for reporting, analysis and marketing use. Other routine uses by agencies may be published in the Federal Register. | |
| Changing the benefits | We have the right to add, modify or delete any benefit, service, or feature of the Account at our discretion. | |
| Assigning the Agreement | We may sell, transfer or assign this Agreement and the Account. We may do so at any time without notifying you. You may not sell, assign or transfer the Account or any of your obligations under this Agreement. | |
| Assigning claims | If you dispute a charge with a merchant, we may credit the Account for all or part of the disputed charge. If we do so, you assign and transfer to us all rights and claims (excluding tort claims) against the merchant. You and any Additional Cardmembers agree not to pursue any claim against the merchant for the credited amount. And you and any Additional Cardmembers must cooperate with us if we decide to do so. | |
| We do not waive our rights | We may choose to delay enforcing or to not exercise rights under this Agreement. If we do this, we do not waive our rights to exercise or enforce them on any other occasion. | |
| Governing law | Utah law and federal law govern this Agreement and the Account. They govern without regard to internal principles of conflicts of law. We are located in Utah. We hold the Account in Utah. We entered into this Agreement with you in Utah. | |
| Notice to Oregon Residents | Service charges not in excess of those permitted by law will be charged on the outstanding balances from month to month. You may pay more than the Minimum Payment Due, up to your entire outstanding balance, at any time. | |
| Notice for residents of Washington State | In accordance with the Revised Code of Washington Statutes, Section 63.14.167, you are not responsible for payment of interest charges that result solely from a merchant's failure to transmit to us within seven working days a credit for goods or services accepted for return or forgiven if you have notified us of the merchant's delay in posting such credit, or our failure to post such credit to your account within three working days of our receipt of the credit. | |

# Claims Resolution

Most customer concerns can be resolved by calling our Customer Service Department at the number listed on the back of your card. In the event Customer Service is unable to resolve a complaint to your satisfaction, this section explains how claims can be resolved through mediation, arbitration or litigation. It includes an arbitration provision. You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase. See Your Right to Reject Arbitration below.

For this section, you and us includes any corporate parents, subsidiaries, affiliates or related persons or entities. Claim means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision.

Claim includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity;

(3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. You may not sell, assign or transfer a claim.

## Sending a Claim Notice

Before beginning a lawsuit, mediation or arbitration, you and we agree to send a written notice (a claim notice) to each party against whom a claim is asserted, in order to provide an opportunity to resolve the claim informally or through mediation. Go to americanexpress.com/claim for a sample claim notice. The claim notice must describe the

claim and state the specific relief demanded. Notice to you may be provided by your billing statement or sent to your billing address. Notice to us must include your name, address and Account number and be sent to American Express ADR c/o CT Corporation System, 111 8th Ave., NY, NY 10011. If the claim proceeds to arbitration, the amount of any relief demanded in a claim notice will not be disclosed to the arbitrator until after the arbitrator rules.

## Mediation

In mediation, a neutral mediator helps parties resolve a claim. The mediator does not decide the claim but helps parties reach agreement.

Before beginning mediation, you or we must first send a claim notice. Within 30 days after sending or receiving a claim notice, you or we may submit the claim to JAMS (1-800-352-5267, jamsadr.com) or the American Arbitration Association ("AAA") (1-800-778-7879, adr.org) for mediation. We will pay the fees of the mediator.

All mediation-related communications are confidential, inadmissible in court and not subject to discovery.

All applicable statutes of limitation will be tolled from the date you or we send the claim notice until termination of the mediation. Either you or we may terminate the mediation at any time. The submission or failure to submit a claim to mediation will not affect your or our right to elect arbitration.

## Arbitration

You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's authority is limited to claims between you and us alone. Claims may not be joined or consolidated unless you and we agree in writing. An arbitration award and any judgment confirming it will apply only to the specific case and cannot be used in any other case except to enforce the award. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.

### Initiating Arbitration

Before beginning arbitration, you or we must first send a claim notice. Claims will be referred to either JAMS or AAA, as selected by the party electing arbitration. Claims will be resolved pursuant to this Arbitration provision and the selected organization's rules in effect when the claim is filed, except where those rules conflict with this Agreement. If we choose the organization, you may select the other within 30 days after receiving notice of our selection. Contact JAMS or AAA to begin an arbitration or for other information. Claims also may be referred to another arbitration organization if you and we agree in writing or to an arbitrator appointed pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA).

We will not elect arbitration for any claim you file in small claims court, so long as the claim is individual and pending only in that court. You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered.

Either you or we may delay enforcing or not exercise rights under this Arbitration provision, including the right to arbitrate a claim, without waiving the right to exercise or enforce those rights.

### Limitations on Arbitration

If either party elects to resolve a claim by arbitration, that claim will be arbitrated on an individual basis. There will be no right or authority for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of the general public, other cardmembers or other persons similarly situated.

Not withstanding any other provision and without waiving the right to appeal such decision, if any portion of these Limitations on Arbitration is deemed invalid or unenforceable, then the entire Arbitration provision (other than this sentence) will not apply.

### Arbitration Procedures

This Arbitration provision is governed by the FAA. The arbitrator will apply applicable substantive law, statutes of limitations and privileges. The arbitrator will not apply any federal or state rules of civil procedure or evidence in matters relating to evidence or discovery. Subject to the Limitations on Arbitration, the arbitrator may otherwise award any relief available in court. You and we agree that the arbitration will be confidential. You and we agree that we will not disclose the content of the arbitration proceeding or its outcome to anyone, but you or we may notify any government authority of the claim as permitted or required by law.

If your claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents, through a telephonic hearing, or by an in-person hearing. At any party's request, the arbitrator will provide a brief written explanation of the award. The arbitrator's award will be final and binding, subject to each party's right to appeal as stated in this section and/or to challenge or appeal an arbitration award pursuant to the FAA. To initiate an appeal, a party must notify the arbitration organization and all parties in writing within 35 days after the arbitrator's award is issued. The arbitration organization will appoint a three-arbitrator panel to decide anew, by majority vote based on written submissions, any aspect of the decision objected to. The appeal will otherwise proceed pursuant to the arbitration organization's appellate rules. Judgment upon any award may be entered in any court having jurisdiction. At your election, arbitration hearings will take place in the federal judicial district of your residence.

### Arbitration Fees and Costs

You will be responsible for paying your share of any arbitration fees (including filing, administrative, hearing or other fees), but only up to the amount of the filing fees you would have incurred if you had brought a claim in court. We will be responsible for any additional arbitration fees. At your written request, we will consider in good faith making a temporary advance of your share of any arbitration fees, or paying for the reasonable fees of an expert appointed by the arbitrator for good cause.

### Additional Arbitration Awards

If the arbitrator rules in your favor for an amount greater than any final offer we made before the final hearing in arbitration, the arbitrator's award will include: (1) any money to which you are entitled, but in no case less than $5,000; and (2) any reasonable attorneys' fees, costs and expert and other witness fees.

### Your Right to Reject Arbitration

You may reject this Arbitration provision by sending a written rejection notice to us at: American Express, P.O. Box 981556, El Paso, TX 79998. Go to americanexpress.com/reject for a sample rejection notice. Your rejection notice must be mailed within 45 days after your first card purchase. Your rejection notice must state that you reject the Arbitration provision and include your name, address, Account number and personal signature. No one else may sign the rejection notice. If your rejection notice complies with these requirements, this Arbitration provision and any other arbitration provisions in the cardmember agreements for any other currently open American Express accounts you have will not apply to you, except for Corporate Card accounts and any claims subject to pending litigation or arbitration at the time you send your rejection notice. Rejection of this Arbitration provision will not affect your other rights or responsibilities under this Claims Resolution section or the Agreement. Rejecting this Arbitration provision will not affect your ability to use your card or any other benefit, product or service you may have with your Account.

### Continuation

This section will survive termination of your Account, voluntary payment of your Account balance, any legal proceeding to collect a debt, any bankruptcy and any sale of your Account (in the case of a sale, its terms will apply to the buyer of your Account). If any portion of this Claims Resolution section, except as otherwise provided in the Limitations on Arbitration subsection, is deemed invalid or unenforceable, it will not invalidate the remaining portions of this Claims Resolution section.



# Billing Dispute Procedure

**What To Do If You Find a Mistake on Your Statement**

If you think there is an error on your statement, write to us at:

   American Express
   PO Box 981535
   El Paso TX 79998-1535

In your letter, give us the following information:

- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 2 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we will do two things:

1. Within 30 days of receiving your letter, we will tell you that we received your letter. We will also tell you if we have already corrected the error.
2. We will investigate your inquiry and will either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:

- We will not try to collect the amount in question, nor report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we will not report you as delinquent without also reporting that you are questioning your bill. We will tell you the name of anyone to whom we reported you as delinquent, and we will let those organizations know when the matter has been settled between us.

# Your Agreement for Transferring Funds Electronically

This EFT Agreement is between American Express Travel Related Services Company, Inc. and you, once you enroll in an Electronic Funds Transfer Service of ours (service) such as AutoPay, Pay By Computer, or Pay By Phone. This replaces any previous agreement you may have with us for the services.

**Words we use in this agreement**

In this EFT Agreement, you and your mean, in addition to the Basic Cardmember, any Additional Cardmembers who have enrolled in the service. We, our, and us mean American Express Travel Related Services Company, Inc. Your card account means the American Express card account. Your bank is the bank, securities firm, or other financial institution that holds your bank account. Your bank account is the bank account you use to pay for any transactions you make through the service. Withdraw or withdrawal means an electronic debit or deduction of funds from your bank account. Our business days are Monday through Friday, excluding holidays.

**How Express Cash works**

Express Cash enables you to withdraw cash from your bank account at participating automated teller machines (ATMs). If you enroll in Express Cash, we will issue or allow you to choose a Personal Identification Number (PIN). You must use this PIN along with your card when withdrawing cash from an ATM. Keep your PIN confidential.

Each time you withdraw cash using Express Cash, we will charge a fee of 3% of the amount of the transaction or $5, whichever is more. The amount of the transaction is the total of the:

- amount of the withdrawal or funds transfer,
- amount of goods or services received, and
- any fee charged by the ATM operator or network used for the withdrawal.

The amount of the transaction and the fee that we charge will be withdrawn from your bank account.

For each withdrawal made in a foreign currency, we charge a fee of 2.7% of the converted U.S. dollar amount of the transaction. This fee will be withdrawn from your bank account. However, we do not charge this fee for ATM withdrawals made using cards issued on U.S. Consumer or OPEN Platinum Card or Centurion Card accounts. See Converting charges made in a foreign currency in Part 2 of the Cardmember Agreement.

If a transaction is not honored by your bank, we will charge the amount of the transaction and a fee of $38 to your card account, or we may collect them directly from you.

**Limits on amounts and frequency of withdrawals**

We apply the following limits to the amount that can be withdrawn in a 30-day period. In addition, there is a limit of 7 withdrawals in a single day (regardless of the dollar amount of such withdrawals).

| | |
|---|---|
| Plum Card® | $3,000 in a 30-day period |
| Green Card | $3,000 in a 30-day period |
| Gold Card | $8,500 in a 30-day period |
| Exec. Bus. Card | $8,500 in a 30-day period |
| Platinum Card® | $10,000 in a 30-day period |
| Centurion® Card | $10,000 in a 30-day period |

You can get a receipt from the ATM each time you withdraw money from your bank account using Express Cash.

Your monthly statement for your card account will show any Express Cash transactions in that billing period.

**AutoPay, Pay By Computer, Pay By Phone**

With these services, you can initiate electronic payments to your card account. When you do so, you allow us or our agent to draw a check on or initiate an automated clearing house (ACH) withdrawal from your bank account in the amount you authorize.

If your bank returns a check or ACH withdrawal unpaid the first time we submit it for payment, we may cancel your right to use the service. Your bank may charge you a fee if this happens.

**How to stop AutoPay payments**

The following terms do not apply to certain AutoPay programs and options where a business bank account is used for the transaction; and the specific terms and conditions of those programs and options will define any applicable notice and cancelation terms:

(1) If you have told us to make AutoPay payments from your bank account, you can stop any of these payments by calling us at 1-800-227-4669 or writing to American Express, Electronic Funds Services, P.O. Box 981540, El Paso, TX 79998-1540 in time for us to receive your request at least 2 business days before the payment is scheduled to be made.

(2) We will tell you, at least 10 days before each payment, when it will be made and how much it will be.

(3) If we receive your request to stop one of these payments at least 2 business days before the payment is scheduled to be made and we do not stop it, we will be liable for your losses or damages.

**Unauthorized transactions**

Tell us AT ONCE if you believe your card or PIN has been lost, stolen or used without your permission, or if you believe that a transaction has been made without your permission. Calling is the best way of keeping your possible losses down. You could lose all the money in your bank account (plus your maximum overdraft line of credit, if applicable). If you tell us within 2 business days after you learn of the loss, theft or unauthorized use of your card or PIN, you can lose no more than $50 if someone used your card or PIN without your permission.

If you do NOT tell us within 2 business days after you learn of the loss or theft of your card or PIN, and we can prove we could have stopped someone from using your card or PIN without your permission if you had told us, you could lose as much as $500.

Tell us if you believe that someone has used or may use your card or PIN to use the EFT service without your permission. Call anytime at 1-800 528-4800 (or 1-336-393-1111 collect, if not in the U.S.). You may also write to us at American Express, Electronic Funds Services, P.O. Box 981532, El Paso, TX 79998-1532.

**Improper transactions or payments**

If we do not complete a transfer to or from your bank account on time or in the correct amount, according to this EFT Agreement, we will be liable for your losses or damages.

There are some exceptions. We are not liable:

- if, through no fault of ours, you do not have enough money in your bank account;
- if the transfer would go over the credit limit on any overdraft line you may have;
- if the ATM where you are making the transfer does not have enough cash;
- if the funds in your bank account were subject to legal process or other encumbrance that restricted the transaction;
- if circumstances beyond our control (such as fire or flood) prevented the transaction, despite our reasonable precautions; or
- if the terminal or system was not working properly and you knew about the breakdown when you started the transfer.

**Privacy**

We will disclose information to third parties about your transactions:

- when necessary for completing transactions;
- to comply with government agency or court orders; or
- as stated in our Privacy Notice, which covers your use of the services.

**Arbitration**

The Arbitration section, in Part 2 of the Cardmember Agreement, applies to this EFT Agreement and the services.

**How to contact us about the services**

You can call us at 1-800-IPAY-AXP for Pay By Phone questions, at 1-800-528-2122 for Pay By Computer questions, at 1-800-528-4800 for AutoPay questions, and at 1-800-CASH-NOW for Express Cash questions. You may also write to us at American Express, Electronic Funds Services, P.O. Box 981531, El Paso, TX 79998-1531.

**In case of errors or questions**

If you think your statement or receipt is wrong, or if you need more information about a transaction on your statement or receipt, call or write us as soon as you can. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. If you do not contact us because of certain circumstances (such as you are in the hospital), we may extend the 60-day period for a reasonable time. When you contact us:

- tell us your name and account number.
- describe the error or the transaction you are unsure about. Explain as clearly as you can why you believe it is an error or why you need more information.
- tell us the amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days after you called us. Within 10 business days after we hear from you we will determine whether an error has occurred. We will correct any error promptly. However, if we need more time, we may take up to 45 calendar days to investigate. If we do take more time, we will credit your bank account within 10 business days for the amount you think is in error so that you will have use of the funds during the time it takes to complete our investigation.

If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your bank account for the amount you question. We will tell you the results within 3 business days after completing our investigation.

If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation. If we have credited your bank account and find no error, we will tell you when we will withdraw that amount from your bank account again. You authorize us to withdraw this amount from your bank account. If your bank account does not have enough funds to cover this withdrawal, we can charge the amount to your card account or collect the amount from you. If this happens, we may cancel your right to use a service.

We may end the services
We, or any bank or financial institution that participates in the Express Cash service, may add to or remove any ATMs from the service. We may extend or limit the services at any location without telling you ahead of time. Also, we may stop a service at any time.

We may cancel your participation in a service at any time. If we do, we will write to you, but we may not send you the notice until after we cancel. Also, we may refuse to authorize a transaction at our discretion.

We will end or suspend use of a service if:
- you do not use it for 18 months in a row,
- your card account is in default,
- your card account is cancelled or suspended,
- you cancel the authorization you gave your bank to pay for any transactions you make through the service, or
- your bank account is closed to withdrawals by us or our agents.

You may choose to stop using any service. If you do, you must write to us at: American Express, Electronic Funds Services, P.O. Box 981531, El Paso, TX 79998-1531.

Assignment
We may assign this EFT Agreement to a subsidiary or affiliate at any time.

Note for Massachusetts residents
General disclosure statement: Any documentation given to you which shows that an electronic funds transfer was made will be admissible as evidence of that transfer and will constitute prima facie proof that the transfer was made.

Except as explained in this EFT Agreement, if you initiate an electronic funds transfer from your bank account, you cannot stop payment of the transfer.

Unless otherwise provided in this EFT Agreement, you may not stop payment of electronic funds transfers. Therefore, do not use electronic transfers for purchases or service unless you are satisfied that you will not need to stop payment.

Disclosure of bank account information to third parties: If you give us your written authorization to disclose information about you, your bank account, or the transactions that you make to any person, that authorization will automatically expire 45 days after we receive it.

Optional limit on obtaining cash: You can ask us to limit the total amount of cash that you may get from ATMs in a single day to $50. If you choose this option, we will take all reasonable steps to comply with your request.

## Cardmember Agreement: Part 1 of 2

**As of:** 07/15/2015

**Business Gold Rewards Card**
**Issuer:** American Express Bank, FSB

**Company Name:** ZADEH KICKS LLC
**Cardmember Name:** MICHAEL MALEKZADEH
**Account Ending In:** 11007

### Fees Table

| Fees | |
|---|---|
| **Annual Membership Fee** | **$0** for the first year, then **$175** |
| **Transaction Fees** | |
| • Foreign Transaction | **2.7%** of each transaction after conversion to US dollars. |
| **Penalty Fees** | |
| • Late Payment | **$38** or **2.99%** of any past due Pay in Full amount, whichever is greater. |
| • Returned Payment | **$38** |

**How we calculate interest:** We use the Average Daily Balance method (including new transactions). See the *How we calculate interest* section in Part 2.

## How Rates and Fees Work

| Rates for Pay Over Time balances | *See About Pay Over Time features in Part 2 of this Agreement* |
|---|---|
| **When the penalty APR will apply** | The penalty APR applies to Pay Over Time balances if:<br>• you do not pay at least the Minimum Payment Due by the Closing Date of the billing period in which it is due 2 times in 12 billing periods,<br>• you do not pay at least the Minimum Payment Due by the Closing Date of the billing period in which it is due and you still do not pay it by the Closing Date of the next billing period, or<br>• your payment is returned by your bank. |
| **How long the penalty APR will apply** | The penalty APR will apply until after you have made timely payments with no returned payments for 12 billing periods in a row. |

| **Fees** | |
|---|---|
| **Annual Membership** | This fee is on the *Rates and Fees Table* on page 1 of Part 1. We will charge $50 for the first Additional Gold Card and no annual membership fee for each Additional Gold Card thereafter. The maximum number of Additional Cards on an Account is 99. |
| **Late Payment** | $38 if you do not pay the Amount Due on a billing statement before the 10th day after the next Closing Date.<br><br>Also, if you do not pay that Amount Due by the following Closing Date, we may charge you an additional fee in that same billing period of the greater of $38 or 2.99% of any past due Pay In Full amounts.<br><br>For each following Closing Date that an amount past due remains unpaid, we may charge a fee of the greater of $38 or 2.99% of any past due Pay In Full amounts.<br><br>Your late fee will not exceed the Amount Due or any limit established by applicable law.<br><br>Paying late may also result in a penalty APR. See *When the penalty APR will apply* above. |
| **Returned Payment** | $38 if your payment is returned unpaid the first time we present it to your bank. A returned payment may also result in a penalty APR for Pay Over Time balances. See *When the penalty APR will apply* above. |
| **Returned Check** | $38 if you use your card to cash a check at one of our approved locations and the check is returned unpaid. We will also charge you the unpaid amount. |
| **Foreign Transaction** | 2.7% of the converted U.S. dollar amount. This fee is a finance charge. See Part 2 for *Converting charges made in a foreign currency.* |

**Part 1, Part 2 and any supplements or amendments make up your Cardmember Agreement.**

27965

## Detail of Changes to Your Cardmember Agreement

This notice amends the Cardmember Agreement (the "Agreement") as described below. We have the right to amend as described in the Agreement. Any terms in the Agreement conflicting with these changes are replaced fully and completely. Terms not changed by this notice remain in full force and effect. We encourage you to read this notice, share it with Additional Cardmembers on your account, and file it for future reference. If you have any questions about these changes, please call the number on the back of your Card.

**Foreign Transaction Fee**
Effective July 28, 2015, the *Rates and Fees Table* section of Part 1 of the Cardmember Agreement is amended by deleting the *Foreign Transaction* row and replacing it with the following:

| **Transaction Fees**<br>• Foreign Transaction | **None** |
|---|---|

Effective July 28, 2015, the *How Rates and Fees Work* section of Part 1 of the Cardmember Agreement is amended by deleting the *Foreign Transaction* row and replacing it with the following:

| **Foreign Transaction** | None |
|---|---|

Exhibit B - Page 3 of 14

This page intentionally left blank.

FDR 997075

## Cardmember Agreement: Part 2 of 2

Doc 27310

# How Your American Express Account Works

## Introduction

| | | |
|---|---|---|
| **About your Cardmember Agreement** | This document together with Part 1 make up the Cardmember Agreement (*Agreement*) for the *Account* identified on page 1 of Part 1. Any supplements or amendments are also part of the Agreement. | When you or an Additional Cardmember, as defined below, use the Account (or sign or keep a card), you agree to the terms of the Agreement. |
| **Words we use in the Agreement** | ***We***, ***us***, and ***our*** mean the issuer shown on page 1 of Part 1. Except as provided below, ***Basic Cardmember*** means the person who applied for this account or to whom we address billing statements. ***Company*** means the business for which the Account is established. ***You*** and ***your*** mean the Basic Cardmember and the Company. You agree, jointly and severally, to be bound by the terms of this Agreement. | ***Card*** means any card or other device that we issue to access your Account. A ***charge*** is any amount added to your Account, such as purchases and fees. A ***purchase*** is a charge for goods or services. To ***pay*** by a certain date means to send your payment so that we receive it and credit it to your Account by that date (see *About your payments* in Part 2). |
| **Additional Cardmembers** | At your request, we may issue cards to *Additional Cardmembers*. They do not have accounts with us but they can use your Account subject to the terms of this Agreement.<br><br>You are responsible for all use of the Account by Additional Cardmembers and anyone they allow to use the Account. You must pay for all charges they make. You must share this agreement with all Additional Cardmembers.<br><br>You must tell Additional Cardmembers that:<br>• we may obtain, provide and use information about them.<br>• their use of the Account is subject to this Agreement. | You authorize us to give Additional Cardmembers information about the Account and to discuss it with them.<br><br>If you want to cancel an Additional Cardmember's right to use your Account (and cancel their card) you must tell us.<br><br>We may refer to *Additional Card(s)* and *Additional Cardmember(s)* as *Employee Card(s)* and *Employee Cardmember(s)*. All terms and conditions that apply to Additional Cards also apply to Employee Cards. |
| **Replacement Basic Cardmember** | You must tell us if the Basic Cardmember is no longer an employee or officer of the Company or does not want to be the Basic Cardmember. In that case, you must either close the Account, or propose another person to replace the Basic Cardmember.<br><br>If you propose another person to replace the Basic Cardmember, that person must agree to assume the | obligations and liabilities of the Basic Cardmember under this Agreement, as of the date that such person replaces the Basic Cardmember. That person is subject to our approval.<br><br>You agree that the Basic Cardmember remains the Basic Cardmember until we approve a replacement or the Account is closed. |

## About using your card

| | | |
|---|---|---|
| **Using the card** | You may use the card to make purchases. You may also use the card at an ATM to get cash from a checking account you designate.<br><br>Each Cardmember acknowledges and agrees that cards are intended to be used for the Company's commercial or business purposes.<br><br>We decide whether to approve a charge based on how you spend and pay on this Account and other accounts you have with us and our affiliates. We also consider your credit history and your personal resources that we know about.<br><br>You may arrange for certain merchants to store your card number and expiration date, so that, for example: | • the merchant may charge your account at regular intervals; or<br>• you may make charges using that stored card information.<br><br>We may (but are not required to) tell these merchants if your expiration date or card number changes or if your account is cancelled. You must notify the merchants directly if you want them to stop charging your Account.<br><br>Keep your card safe and don't let anyone else use it. If your card is lost or stolen or your Account is being used without your permission, contact us right away. You may not use your Account for illegal activities. |
| **Promise to pay** | You promise to pay all charges, including:<br>• charges you make, even if you do not present your card or sign for the transaction,<br>• charges that other people make, whether or not you or an Additional Cardmember intend to let them use the Account, subject to applicable law, and<br>• charges that Additional Cardmembers make or permit others to make. | |
| **Declined transactions** | We may decline to authorize a charge. Reasons we may do this include suspected fraud and our assessment of your creditworthiness. This may occur even if your Account is not in default. | We are not responsible for any losses you incur if we do not authorize a charge. And we are not responsible if any merchant refuses to accept the card. |

**About Pay Over Time features**

We may add features to the Account that allow you to pay certain charges over time.

If you enroll in the Extended Payment Option, we will automatically place all eligible charges into a Pay Over Time balance. A charge is eligible if it equals or is more than a certain dollar amount. We will tell you this amount when you enroll, and it is subject to change. We will tell you if we change it. Certain charges are not eligible, such as cash and similar transactions.

We assign a Pay Over Time limit to your Account. We will not place any charge into a Pay Over Time balance if it causes the total of your Pay Over Time balances to go over your Pay Over Time limit. We may increase or decrease the Pay Over Time limit. We may do so even if you pay on time and your Account is not in default. We will tell you if we change that amount. You must pay in full upon receipt of your billing statement all charges that are not placed into a Pay Over Time balance. We may change which charges are eligible to be placed into a Pay Over Time balance.

## About your payments

**When you must pay**

Payment of the New Balance is due upon receipt of your statement. If a statement includes a Pay Over Time balance, it will show a Minimum Payment Due. In this case, you must pay at least the Minimum Payment Due by the Payment Due Date. Each statement also states the time and manner by which you must make your payment for it to be credited as of the same day it is received.

Each statement also shows a Closing Date. The Closing Date is the last day of the billing period covered by the statement. Each Closing Date is about 30 days after the previous statement's Closing Date. Each statement also shows a Next Closing Date.

**How to make payments**

Make payments to us in U.S. dollars with:

- a single check drawn on a U.S. bank, or
- a single negotiable instrument clearable through the U.S. banking system, for example a money order, or
- an electronic payment that can be cleared through the U.S. banking system.

When making a payment by mail:

- make a separate payment for each Account,
- mail your payment to the address shown on the payment coupon on the billing statement, and
- write the Account number on your check or negotiable instrument and include the payment coupon.

If your payment meets the above requirements, we will credit it to the Account as of the day we receive it, as long as we receive it by the time disclosed in the billing statement. If we receive it after that time, we will credit the payment on the day after we receive it.

If your payment does not meet the above requirements, there may be a delay in crediting the Account. This may result in late fees and additional interest charges (see *How Rates and Fees Work* on page 2 of Part 1).

If we decide to accept a payment made in a foreign currency, we will choose a rate to convert your payment into U.S. dollars, unless the law requires us to use a particular rate.

If we process a late payment, a partial payment, or a payment marked with any restrictive language, that will have no effect on our rights and will not change this Agreement.

**How we apply payments and credits**

If a statement includes a Pay Over Time balance, it will show a Minimum Payment Due. The Minimum Payment Due is the Pay In Full New Balance plus the Pay Over Time Minimum Due.

If you have a Pay Over Time balance, we generally apply payments--up to the Minimum Payment Due--first to the Pay Over Time Minimum Due and then to the Pay In Full New Balance. When applying a payment to the Pay Over Time Minimum Due, we apply it first to the balance with the lowest interest rate and then to balances with higher interest rates.

After the Minimum Payment Due has been paid, we apply payments to the remaining Pay Over Time balance. When we do this, we apply payments first to the balance with the highest interest rate and then to balances with lower interest rates.

In most cases, we apply a credit to the same balance as the related charge. We may apply payments and credits within balances, and among balances with the same interest rate, in any order we choose.

## About your Minimum Payment Due

**How we calculate your Minimum Payment Due**

The Minimum Payment Due is the Pay In Full amount plus any Pay Over Time Minimum Due. To calculate the Pay Over Time Minimum Due for each statement, we start with the *higher* of:

**(1)** interest charged on the statement plus 1% of the Pay Over Time New Balance (excluding interest on the statement); or
**(2)** $35.

Then we round to the nearest dollar and add any Pay Over Time amount past due. Your Pay Over Time Minimum Due will not exceed your Pay Over Time New Balance. You may pay more than the Minimum Payment Due, up to your entire outstanding balance, at any time.

*EXAMPLE: Assume that you have a Pay Over Time New Balance of $3,000, interest of $29.57, no amounts past due, and a $400 Pay In Full amount.*
**(1)** *$29.57 + 1% x ($3,000 - $29.57) = $59.27*
**(2)** *$35*
*The higher of (1) or (2) is $59.27, which rounds to $59.00. The Pay Over Time Minimum Due of $59.00 plus the Pay in Full amount of $400 together make up the Minimum Payment Due of $459.00.*

## About interest charges

| | |
|---|---|
| **When we charge interest** | We charge interest on these transactions beginning on their transaction date until they are paid. However, we will not charge interest on these transactions during a billing period if: <br> • your *Pay Over Time Previous Balance* for the billing period is zero; or <br> • you paid the *Account Total Previous Balance* for each of the previous two billing periods in full by the closing date shown on their respective statements. |
| **How we calculate interest** | We calculate interest for a billing period by first calculating interest on each balance within each feature. Balances within each feature-such as Sign & Travel and Extended Payment Option-may have different interest rates. |

We use the **Average Daily Balance method (including new transactions)** to calculate interest charges for each balance. The total interest charged for a billing period is the sum of the interest charged on each balance.

**Interest**

The interest charged for a balance in a billing period, except for variations caused by rounding, equals:
• Average Daily Balance (*ADB*) **x**
• Daily Periodic Rate (*DPR*) **x**
• number of days the DPR was in effect.

**ADB**

To get the ADB for a balance, we add up its *daily balances*. Then we divide the result by the number of days the DPR for that balance was in effect. If the daily balance is negative, we treat it as zero.

**DPR**

A DPR is 1/365th of an APR, rounded to one tenthousandth of a percentage point. Your DPRs are shown in *How Rates and Fees Work* on page 2 of Part 1.

> **EXAMPLE: Calculating Interest**
>
> *Assume that you have a single interest rate of 15.99%, your ADB is $2,250 and there are 30 days in the billing period.*
>
> *The **DPR** is 15.99% ÷ 365 days = 0.0438%*
>
> *The **Interest** is $2,250 x 0.0438% x 30 days = $29.57*

**Daily Balance**

For each day a DPR is in effect, we calculate the daily balance by:
• taking the *beginning balance* for the day,
• adding any new charges,
• subtracting any payments or credits; and
• making any appropriate adjustments.

We add a new charge to a daily balance as of its transaction date.

**Beginning balance**

For the first day of a billing period, the beginning balance is the ending balance for the prior billing period, including unpaid interest. For the rest of the billing period, the beginning balance is the previous day's daily balance *plus an amount of interest equal to the previous day's daily balance multiplied by the DPR for that balance. This method of calculating the beginning balance results in daily compounding of interest.*

When an interest rate changes, the new DPR may come into effect during-not just at the beginning of-the billing period. When this happens, we will create a new balance and apply the new DPR to it. To get the beginning balance on the first day for this new balance, we multiply the previous day's daily balance by the old DPR and add the result to that day's daily balance.

**Other methods**

To calculate the ADB and interest charges, we may use other formulas or methods that produce equivalent results. Also, we may choose not to charge interest on certain types of charges.

| | |
|---|---|
| **Determining the Prime Rate** | We use the Prime Rate from the rates section of *The Wall Street Journal*. The Prime Rate for each billing period is the Prime Rate published in *The Wall Street Journal* 2 days before the Closing Date of the billing period. |

*The Wall Street Journal* may not publish the Prime Rate on that day. If it does not, we will use the Prime Rate from the previous day it was published. If *The Wall Street Journal* is no longer published, we may use the Prime Rate from any other newspaper of general circulation in New York, New York. Or we may choose to use a similar published rate.

If the Prime Rate increases, variable APRs (and corresponding DPRs) will increase. In that case, you may pay more interest and may have a higher Minimum Payment Due. When the Prime Rate changes, the resulting changes to variable APRs take effect as of the first day of the billing period.

## Other important information

| | | |
|---|---|---|
| **Changing the Agreement** | We may change the terms of, or add new terms to, this Agreement. We may apply any changed or new terms to any existing and future balances on the Account, subject to applicable law. | This written Agreement is a final expression of the agreement governing the Account. The written Agreement may not be contradicted by any alleged oral agreement. |
| **Converting charges made in a foreign currency** | If you make a charge in a foreign currency, we will convert it into U.S. dollars on the date we or our agents process it. Unless a particular rate is required by law, we will choose a conversion rate that is acceptable to us for that date. The rate we use is no more than the highest official rate published by a government agency or the highest interbank rate we identify from customary banking sources on the conversion date or the prior business day. This rate may differ from rates that are in effect on the date of your charge. We will bill charges converted by establishments (such as airlines) at the rates they use. | |
| **Changing your billing address** | You must notify us immediately if you change the: <br> • mailing address, email address, telephone numbers, or fax numbers that we use to send you billing statements, notices or other communications. <br> • legal entity of the Company. <br> • tax identification number. | |

| | | |
|---|---|---|
| **Closing your Account** | You may instruct us to close the Account by calling us or writing to us. The Basic Cardmember agrees to inform the Company prior to instructing us to do so. | The Basic Cardmember and the Company remain jointly and severally liable for all Charges made on the Account. |
| **Cancelling or suspending your Account** | We may:<br><br>• cancel your Account,<br>• suspend the ability to make charges,<br>• cancel or suspend any feature on your Account, and<br>• notify merchants that your Account has been cancelled or suspended.<br><br>If we do any of these, you must still pay us for all charges under the terms of this Agreement. | We may do any of these things at our discretion, even if you pay on time and your Account is not in default.<br><br>If your Account is cancelled, you must destroy your cards.<br><br>We may agree to reinstate your Account after a cancellation. If we do this, we may:<br><br>• reinstate any additional cards issued on your Account,<br>• charge you any applicable annual fees, and<br>• charge you a fee for reinstating the Account. |
| **About default** | We may consider your Account to be in default if:<br><br>• you violate a provision of this Agreement,<br>• you give us false information,<br>• you file for bankruptcy,<br>• you default under another agreement you have with us or an affiliate,<br>• you become incapacitated or die, or<br>• we believe you are unable or unwilling to pay your debts when due. | If we consider your Account in default, we may:<br><br>• suspend your ability to make charges,<br>• cancel or suspend any feature on your Account,<br>• cancel the Account and require you to pay the Account balance immediately.<br>• require you to pay more than your Minimum Payment Due immediately. |
| **Collection costs** | You agree to pay all reasonable costs, including attorneys' fees, that we incur to collect amounts you owe or to protect ourselves from loss, harm or risk relating to default. | |
| **Credit reports** | You agree that we will obtain credit reports about you, investigate your ability to pay, and obtain information about you from other sources including information to verify and re-verify your employment and income. And you agree that we will use such information for any purposes, subject to applicable law.<br><br>You agree that we will give information about the Account to credit reporting agencies. We will tell a credit reporting agency if you fail to comply with any term of this Agreement. This may have a negative impact on your credit report.<br><br>If you believe information we have given to a credit reporting agency is incorrect, write to us at: American Express Credit Bureau Unit, P.O. Box 981537, El Paso, TX 79998-1537. When you write to us, tell us the specific information you believe is incorrect. | |
| **Sending you notices** | We send you notices through the U.S. mail (postage prepaid) or electronically using the information in our records. Any notice we send you is deemed given when deposited in the U.S. mail or when sent electronically. Additionally, we may send notices and information to Additional Cardmembers at their request. | |
| **We may contact you** | **Servicing and collections**<br>If we need to contact you to service your account or to collect amounts you owe, you authorize us (and our affiliates, agents and contractors) to contact you at any number you provide, from which you call us, or at which we believe we can reach you. We may contact you in any way, such as calling or texting. We may contact you using an automated dialer or prerecorded messages. We may contact you on a mobile, wireless or similar device, even if you are charged for it.<br><br>**Call monitoring**<br>We may monitor and record any calls between you and us. | |
| **About insurance products** | We or our affiliates may tell you about insurance and non-insurance products, services or features that may have a fee. One of our affiliates may act on behalf of a provider of these products. The affiliate may be compensated for this. The insurance products are not offered or sold by us or on our behalf. Our affiliates may get additional compensation when AMEX Assurance Company or another affiliate is the insurer or reinsurer. Compensation may influence what products and providers we or our affiliates tell you about.<br><br>We may share information about you with our affiliates so they can identify products that may interest you. We may be compensated for this information. | |
| **How we handle electronic debits from your checking account** | When you pay us by check, you authorize us to electronically deduct the amount from your bank or other asset account.<br><br>We may process the check electronically by transmitting to your financial institution:<br>• the amount,<br>• the routing number,<br>• the account number, and<br>• the check serial number. | If we do this, your payment may be deducted from your bank or other asset account on the same day we receive your check. Also, you will not receive that cancelled check with your bank or asset account billing statement.<br><br>If we cannot collect the funds electronically, we may issue a draft against your bank or other asset account for the amount of the check. |
| **ExpressPay** | Cards issued on the Account may be equipped with ExpressPay. ExpressPay enables you to make charges without having the card swiped or imprinted. You can call us to deactivate ExpressPay at any time. Also, we may deactivate ExpressPay at any time. | |

| | |
|---|---|
| **Privacy Act of 1974 notice** | Some federal agencies may accept the card under authority of statute. When you or Additional Cardmembers make charges at these agencies, we collect certain charge information. That information may be put to routine uses such as processing, billing and collections. It may also be aggregated for reporting, analysis and marketing use. Other routine uses by agencies may be published in the Federal Register. |
| **Changing the benefits** | We have the right to add, modify or delete any benefit, service, or feature of the Account at our discretion. |
| **Assigning the Agreement** | We may sell, transfer or assign this Agreement and the Account. We may do so at any time without notifying you. You may not sell, assign or transfer the Account or any of your obligations under this Agreement. |
| **Assigning claims** | If you dispute a charge with a merchant, we may credit the Account for all or part of the disputed charge. If we do so, you assign and transfer to us all rights and claims (excluding tort claims) against the merchant. You and any Additional Cardmembers agree not to pursue any claim against the merchant for the credited amount. And you and any Additional Cardmembers must cooperate with us if we decide to do so. |
| **We do not waive our rights** | We may choose to delay enforcing or to not exercise rights under this Agreement. If we do this, we do not waive our rights to exercise or enforce them on any other occasion. |
| **Governing law** | Utah law and federal law govern this Agreement and the Account. They govern without regard to internal principles of conflicts of law. We are located in Utah. We hold the Account in Utah. We entered into this Agreement with you in Utah. |
| **Notice to Oregon Residents** | Service charges not in excess of those permitted by law will be charged on the outstanding balances from month to month. You may pay more than the minimum payment due, up to your entire outstanding balance, at any time. |
| **Notice for residents of Washington State** | In accordance with the Revised Code of Washington Statutes, Section 63.14.167, you are not responsible for payment of interest charges that result solely from a merchant's failure to transmit to us within seven working days a credit for goods or services accepted for return or forgiven if you have notified us of the merchant's delay in posting such credit, or our failure to post such credit to your account within three working days of our receipt of the credit. |

# Claims Resolution

Most customer concerns can be resolved by calling our Customer Service Department at the number listed on the back of your card. In the event Customer Service is unable to resolve a complaint to your satisfaction, this section explains how claims can be resolved through mediation, arbitration or litigation. It includes an arbitration provision. **You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase. See *Your Right to Reject Arbitration* below.**

For this section, *you* and *us* includes any corporate parents, subsidiaries, affiliates or related persons or entities. *Claim* means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. *Claim* includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. You may not sell, assign or transfer a claim.

**Sending a Claim Notice**
Before beginning a lawsuit, mediation or

arbitration, you and we agree to send a written notice (a ***claim notice***) to each party against whom a claim is asserted, in order to provide an opportunity to resolve the claim informally or through mediation. Go to americanexpress.com/claim for a sample claim notice. The claim notice must describe the claim and state the specific relief demanded. Notice to you may be provided by your billing statement or sent to your billing address. Notice to us must include your name, address and Account number and be sent to American Express ADR c/o CT Corporation System, 111 8th Ave., NY, NY 10011. If the claim proceeds to arbitration, the amount of any relief demanded in a claim notice will not be disclosed to the arbitrator until after the arbitrator rules.

**Mediation**
In mediation, a neutral mediator helps parties resolve a claim. The mediator does not decide the claim but helps parties reach agreement.

Before beginning mediation, you or we must first send a claim notice. Within 30 days after sending or receiving a claim notice, you or we may submit the claim to JAMS (1-800-352-5267, jamsadr.com) or the American Arbitration Association ("AAA") (1-800-778-7879, adr.org) for mediation. We will pay the fees of the mediator.

All mediation-related communications are confidential, inadmissible in court and not subject to discovery.

All applicable statutes of limitation will be tolled until termination of the mediation. Either you or we may terminate the mediation at any time. The submission or failure to submit a claim to mediation will not affect your or our right to elect arbitration.

**Arbitration**
You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

**If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.**

**Initiating Arbitration**
Before beginning arbitration, you or we must first send a claim notice. Claims will be referred to either JAMS or AAA, as selected by the party electing arbitration. Claims will be resolved pursuant to this Arbitration provision and the selected organization's rules in effect when the claim is filed, except where those rules conflict with this Agreement. If we choose the organization, you may select the other within 30 days after receiving notice of our selection. Contact JAMS or AAA to begin an arbitration or for other information. Claims also may be referred to another arbitration organization if you and we agree in writing or to an arbitrator appointed pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (***FAA***).

We will not elect arbitration for any claim you file in small claims court, so long as the claim is individual and pending only in that court. You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered.

Either you or we may delay enforcing or not exercise rights under this Arbitration provision, including the right to arbitrate a claim, without waiving the right to exercise or enforce those rights.

### Limitations on Arbitration

**If either party elects to resolve a claim by arbitration, that claim will be arbitrated on an individual basis. There will be no right or authority for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of the general public, other cardmembers or other persons similarly situated.**

The arbitrator's authority is limited to claims between you and us alone. Claims may not be joined or consolidated unless you and we agree in writing. An arbitration award and any judgment confirming it will apply only to the specific case and cannot be used in any other case except to enforce the award.

Notwithstanding any other provision and without waiving the right to appeal such decision, if any portion of these *Limitations on Arbitration* is deemed invalid or unenforceable, then the entire Arbitration provision (other than this sentence) will not apply.

### Arbitration Procedures

This Arbitration provision is governed by the FAA. The arbitrator will apply applicable substantive law, statutes of limitations and privileges. The arbitrator will not apply any federal or state rules of civil procedure or evidence in matters relating to evidence or discovery. Subject to the *Limitations on Arbitration*, the arbitrator may otherwise award any relief available in court. The arbitration will be confidential, but you may notify any government authority of your claim.

If your claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents, through a telephonic hearing, or by an in-person hearing. At any party's request, the arbitrator will provide a brief written explanation of the award. The arbitrator's award will be final and binding, except for any right of appeal provided by the FAA; however, any party will have 30 days to appeal the award by notifying the arbitration organization and all parties in writing. The organization will appoint a three-arbitrator panel to decide anew, by majority vote based on written submissions, any aspect of the decision objected to. Judgment upon any award may be entered in any court having jurisdiction. At your election, arbitration hearings will take place in the federal judicial district of your residence.

### Arbitration Fees and Costs

You will be responsible for paying your share of any *arbitration fees* (including filing, administrative, hearing or other fees), but only up to the amount of the filing fees you would have incurred if you had brought a claim in court. We will be responsible for any additional arbitration fees. At your written request, we will consider in good faith making a temporary advance of your share of any arbitration fees, or paying for the reasonable fees of an expert appointed by the arbitrator for good cause.

### Additional Arbitration Awards

If the arbitrator rules in your favor for an amount greater than any final offer we made before arbitration, the arbitrator's award will include: (1) any money to which you are entitled, but in no case less than $5,000; and (2) any reasonable attorneys' fees, costs and expert and other witness fees.

### Your Right to Reject Arbitration

You may reject this Arbitration provision by sending a written *rejection notice* to us at: American Express, P.O. Box 981556, El Paso, TX 79998. Go to americanexpress.com/reject for a sample rejection notice. Your rejection notice must be mailed within 45 days after your first card purchase. Your rejection notice must state that you reject the Arbitration provision and include your name, address, Account number and personal signature. No one else may sign the rejection notice. If your rejection notice complies with these requirements, this Arbitration provision and any other arbitration provisions in the cardmember agreements for any other currently open American Express accounts you have will not apply to you, except for Corporate Card accounts and any claims subject to pending litigation or arbitration at the time you send your rejection notice. Rejection of this Arbitration provision will not affect your other rights or responsibilities under this Claims Resolution section or the Agreement. Rejecting this Arbitration provision will not affect your ability to use your card or any other benefit, product or service you may have with your Account.

### Continuation

This section will survive termination of your Account, voluntary payment of your Account balance, any legal proceeding to collect a debt, any bankruptcy and any sale of your Account (in the case of a sale, its terms will apply to the buyer of your Account). If any portion of this Claims Resolution section, except as otherwise provided in the *Limitations on Arbitration* subsection, is deemed invalid or unenforceable, it will not invalidate the remaining portions of this Claims Resolution section.



# Billing Dispute Procedure

### What To Do If You Find a Mistake on Your Statement

If you think there is an error on your statement, write to us at:

American Express
PO Box 981535
El Paso TX 79998-1535

In your letter, give us the following information:
- *Account information*: Your name and account number.
- *Dollar amount*: The dollar amount of the suspected error.
- *Description of problem*: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 2 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

### What Will Happen After We Receive Your Letter

When we receive your letter, we will do two things:
1. Within 30 days of receiving your letter, we will tell you that we received your letter. We will also tell you if we have already corrected the error.
2. We will investigate your inquiry and will either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
- We will not try to collect the amount in question, nor report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
- *If we made a mistake*: You will not have to pay the amount in question or any interest or other fees related to that amount.
- *If we do not believe there was a mistake*: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we will not report you as delinquent without also reporting that you are questioning your bill. We will tell you the name of anyone to whom we reported you as delinquent, and we will let those organizations know when the matter has been settled between us.

# Your Agreement for Transferring Funds Electronically

This *EFT Agreement* is between American Express Travel Related Services Company, Inc. and you, once you enroll in an Electronic Funds Transfer Service of ours (*service*) such as AutoPay, Pay By Computer, or Pay By Phone. This replaces any previous agreement you may have with us for the services.

**Words we use in this agreement**
In this EFT Agreement, *you* and *your* mean, in addition to the Basic Cardmember, any Additional Cardmembers who have enrolled in the service. *We, our,* and *us* mean American Express Travel Related Services Company, Inc. Your *card account* means the American Express card account. Your *bank* is the bank, securities firm, or other financial institution that holds your bank account. Your *bank account* is the bank account you use to pay for any transactions you make through the service. *Withdraw or withdrawal* means an electronic debit or deduction of funds from your bank account. Our *business days* are Monday through Friday, excluding holidays.

**How Express Cash works**
Express Cash enables you to withdraw cash from your bank account at participating automated teller machines (*ATMs*). If you enroll in Express Cash, we will issue or allow you to choose a Personal Identification Number (*PIN*). You must use this PIN along with your card when withdrawing cash from an ATM. Keep your PIN confidential.

Each time you withdraw cash using Express Cash, we will charge a fee of 3% of the amount of the transaction or $5, whichever is more. The amount of the transaction is the total of the:
● amount of the withdrawal or funds transfer,
● amount of goods or services received, and
● any fee charged by the ATM operator or network used for the withdrawal.

The amount of the transaction and the fee that we charge will be withdrawn from your bank account.

For each withdrawal made in a foreign currency, we charge a fee of 2.7% of the converted U.S. dollar amount of the transaction. This fee will be withdrawn from your bank account. However, we do not charge this fee for ATM withdrawals made using cards issued on U.S. Consumer or OPEN Platinum Card or Centurion Card accounts. See *Converting charges made in a foreign currency* in Part 2 of the Cardmember Agreement.

If a transaction is not honored by your bank, we will charge the amount of the transaction and a fee of $38 to your card account, or we may collect them directly from you.

**Limits on amounts and frequency of withdrawals**
We apply the following limits to the amount that can be withdrawn in a 30-day period. In addition, there is a limit of 7 withdrawals in a single day (regardless of the dollar amount of such withdrawals). The ATM operator may also impose limits.

| | |
|---|---|
| Plum Card® | $3,000 in a 30-day period |
| Green Card | $3,000 in a 30-day period |
| Gold Card | $8,500 in a 30-day period |
| Exec. Bus. Card | $8,500 in a 30-day period |
| Platinum Card® | $10,000 in a 30-day period |
| Centurion® Card | $10,000 in a 30-day period |

You can get a receipt from the ATM each time you withdraw money from your bank account using Express Cash.

Your monthly statement for your card account will show any Express Cash transactions in that billing period.

**AutoPay, Pay By Computer, Pay By Phone**
With these services, you can initiate electronic payments to your card account. When you do so, you allow us or our agent to draw a check on or initiate an automated clearing house (ACH) withdrawal from your bank account in the amount you authorize.

If your bank returns a check or ACH withdrawal unpaid the first time we submit it for payment, we may cancel your right to use the service. Your bank may charge you a fee if this happens.

**How to stop AutoPay payments**
The following terms do not apply to certain AutoPay programs and options where a business bank account is used for the transaction; and the specific terms and conditions of those programs and options will define any applicable notice and cancelation terms:
(1) If you have told us to make AutoPay payments from your bank account, you can stop any of these payments by calling us at 1-800-227-4669 or writing to American Express, Electronic Funds Services, P.O. Box 981540, El Paso, TX 79998-1540 in time for us to receive your request at least 2 business days before the payment is scheduled to be made.
(2) We will tell you, at least 10 days before each payment, when it will be made and how much it will be.
(3) If we receive your request to stop one of these payments at least 2 business days before the payment is scheduled to be made and we do not stop it, we will be liable for your losses or damages.

**Unauthorized transactions**
Tell us AT ONCE if you believe your card or PIN has been lost, stolen or used without your permission, or if you believe that a transaction has been made without your permission. Calling is the best way of keeping your possible losses down. You could lose all the money in your bank account (plus your maximum overdraft line of credit, if applicable). If you tell us within 2 business days after you learn of the loss, theft or unauthorized use of your card or PIN, you can lose no more than $50 if someone used your card or PIN without your permission.

If you do NOT tell us within 2 business days after you learn of the loss or theft of your card or PIN, and we can prove we could have stopped someone from using your card or PIN without your permission if you had told us, you could lose as much as $500.

Tell us if you believe that someone has used or may use your card or PIN to use the EFT service without your permission. Call anytime at 1-800-528-4800 (or 1-336-393-1111 collect, if not in the U.S.). You may also write to us at American Express, Electronic Funds Services, P.O. Box 981532, El Paso, TX 79998-1532.

**Improper transactions or payments**
If we do not complete a transfer to or from your bank account on time or in the correct amount, according to this EFT Agreement, we will be liable for your losses or damages.

There are some exceptions. We are not liable:
● if, through no fault of ours, you do not have enough money in your bank account;
● if the transfer would go over the credit limit on any overdraft line you may have;
● if the ATM where you are making the transfer does not have enough cash;
● if the funds in your bank account were subject to legal process or other encumbrance that restricted the transaction;
● if circumstances beyond our control (such as fire or flood) prevented the transaction, despite our reasonable precautions; or
● if the terminal or system was not working properly and you knew about the breakdown when you started the transfer.

**Privacy**
We will disclose information to third parties about your transactions:
● when necessary for completing transactions;
● to comply with government agency or court orders; or
● as stated in our Privacy Notice, which covers your use of the services.

**Arbitration**
The *Arbitration* section, in Part 2 of the Cardmember Agreement, applies to this EFT Agreement and the services.

**How to contact us about the services**
You can call us at 1-800-IPAY-AXP for Pay By Phone questions, at 1-800-528-2122 for Pay By Computer questions, at 1-800-528-4800 for AutoPay questions, and at 1-800-CASH-NOW for Express Cash questions. You may also write to us at American Express, Electronic Funds Services, P.O. Box 981531, El Paso, TX 79998-1531.

**In case of errors or questions**
If you think your statement or receipt is wrong, or if you need more information about a transaction on your statement or receipt, call or write us as soon as you can. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. If you do not contact us because of certain circumstances (such as you are in the hospital), we may extend the 60-day period for a reasonable time. When you contact us:
● tell us your name and account number.
● describe the error or the transaction you are unsure about. Explain as clearly as you can why you believe it is an error or why you need more information.
● tell us the amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days after you called us. Within 10 business days after we hear from you we will determine whether an error has occurred. We will correct any error promptly. However, if we need more time, we may take up to 45 calendar days to investigate. If we do take more time, we will credit your bank account within 10 business days for the amount you think is in error so that you will have use of the funds during the time it takes to complete our investigation.

If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your bank account for the amount you question.

We will tell you the results within 3 business days after completing our investigation. If we

decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation. If we have credited your bank account and find no error, we will tell you when we will withdraw that amount from your bank account. You authorize us to withdraw this amount from your bank account. If your bank account does not have enough funds to cover this withdrawal, we can charge the amount to your card account or collect the amount from you. If this happens, we may cancel your right to use a service.

**We may end the services**
We, or any bank or financial institution that participates in the Express Cash service, may add to or remove any ATMs from the service. We may extend or limit the services at any location without telling you ahead of time. Also, we may stop a service at any time.

We may cancel your participation in a service at any time. If we do, we will write to you, but we may not send you the notice until after we cancel. Also, we may refuse to authorize a transaction at our discretion.

We will end or suspend use of a service if:
- you do not use it for 18 months in a row,
- your card account is in default,
- your card account is cancelled or suspended,
- you cancel the authorization you gave your bank to pay for any transactions you make through the service, or
- your bank account is closed to withdrawals by us or our agents.

You may choose to stop using any service. If you do, you must write to us at American Express, Electronic Funds Services, P.O. Box 981531, El Paso, TX 79998-1531.

**Assignment**
We may assign this EFT Agreement to a subsidiary or affiliate at any time.

## Note for Massachusetts residents
**General disclosure statement:** Any documentation given to you which shows that an electronic funds transfer was made will be admissible as evidence of that transfer and will constitute prima facie proof that the transfer was made.

Except as explained in this EFT Agreement, if you initiate an electronic funds transfer from your bank account, you cannot stop payment of the transfer.

**Unless otherwise provided in this EFT Agreement, you may not stop payment of electronic funds transfers. Therefore, do not use electronic transfers for purchases or service unless you are satisfied that you will not need to stop payment.**

**Disclosure of bank account information to third parties:** If you give us your written authorization to disclose information about you, your bank account, or the transactions that you make to any person, that authorization will automatically expire 45 days after we receive it.

**Optional limit on obtaining cash:** You can ask us to limit the total amount of cash that you may get from ATMs in a single day to $50. If you choose this option, we will take all reasonable steps to comply with your request.

Rev. 9/2012

| FACTS | WHAT DOES AMERICAN EXPRESS DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and income<br>• transaction history and account history<br>• insurance claim history and credit history |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons American Express chooses to share; and whether you can limit this sharing. |

| Reasons we can share personal information | Does American Express share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** – to offer our products and services to you | Yes | No (but please see the "To limit direct marketing" box below for information about additional privacy choices) |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** – information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** – information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | No (although we may share aggregated or de-identified data) | We don't share personal information |

| To limit our sharing | • Visit us online: www.americanexpress.com/communications or<br>• Call 1-855-297-7748 - our menu will prompt you through your choice(s)<br>**Please note**:<br>If you are a *new* customer, we can begin sharing your personal information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your personal information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| To limit direct marketing | We provide additional privacy choices to customers. Privacy elections you make for any one product or service may not automatically be applied to other products and services. To let us know if you do not want us to use your personal information to communicate with you about offers by mail, telephone, and/or e-mail:<br><br>• Visit us online: www.americanexpress.com/communications or<br>• Call 1-855-297-7748 (except for choices about e-mail communications) |
| Questions? | Call 1-800-528-4800 or go to www.americanexpress.com/contact. |

| Who we are | |
|---|---|
| **Who is providing this Notice** | American Express Travel Related Services Company, Inc. and other American Express Affiliates that provide financial products or services, including American Express Centurion Bank, American Express Bank, FSB, and AMEX Assurance Company. |

| What we do | |
|---|---|
| **How does American Express protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does American Express collect my personal information?** | We collect your personal information, for example, when you<br>• open an account or pay your bills<br>• give us your income information or give us your contact information<br>• use your credit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing of personal information?** | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include companies with the American Express name, including financial companies such as American Express Travel Related Services Company, Inc. and nonfinancial companies such as American Express Publishing. Affiliates may also include other companies related by common ownership or control, such as Serve Virtual Enterprises, Inc. and AMEX Assurance Company, a provider of American Express Card-related insurance services.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Nonaffiliates with which we share personal information include service providers, including, for example, direct marketers, that perform services or functions on our behalf.* |
| **Joint marketing** | A formal agreement between nonaffiliated companies that together market financial products or services to you.<br>• *Our joint marketing partners include financial companies.* |

| Other important information |
|---|
| We may transfer personal information to other countries, for example, for customer service or to process transactions.<br><br>**AMEX Assurance Company customers**. You may have the right to access and correct recorded personal information. Personal information may be disclosed by us to detect fraud or misrepresentation, to verify insurance coverage, to an insurance regulatory authority, law enforcement or other governmental authority pursuant to law, or to a group policyholder for purposes of reporting claims experience or conducting an audit. Personal information related to insurance claim activity obtained from a report prepared by an insurance-support organization on our behalf may be retained by such organization and disclosed as required by law. State law may be more protective than federal law.<br><br>**California**: If your American Express account has a California billing address, we will not share your personal information except to the extent permitted under California law.<br><br>**Vermont**: If your American Express account has a Vermont billing address, we will automatically treat your account as if you have directed us not to share information about your creditworthiness with our Affiliates. |

## Cardmember Agreement: Part 1 of 2

**As of:** 03/07/2021

**Blue Cash Everyday®**
**Cardmember Name:** Bethany Mockerman
**Credit Limit:** $1,000 **(Cash Advance Limit:** $200)

**Account Ending In:** 11009

### Rates and Fees Table

**Issuer:** American Express National Bank

| Interest Rates | |
|---|---|
| **Annual Percentage Rate (APR) for Purchases** | **0.00%** introductory APR through your billing period that ends in June, 2022.<br><br>After that, your APR will be **23.99%**. This APR will vary with the market based on the Prime Rate. |
| **APR for Balance Transfers** | **23.99%** for any balance transfer requests we may accept. Balance transfers are not available.<br>This APR will vary with the market based on the Prime Rate. |
| **APR for Cash Advances** | **25.24%**<br>This APR will vary with the market based on the Prime Rate. |
| **Penalty APR and When it Applies** | **29.24%**<br>This APR will vary with the market based on the Prime Rate.<br><br>This APR may be applied to your account if:<br>    1) you make one or more late payments; or<br>    2) your payment is returned by your bank.<br><br>We may also consider your creditworthiness in determining whether or not to apply the penalty APR to your Account.<br><br>**How Long Will the Penalty APR Apply?** If the penalty APR is applied, it will apply for at least 6 months. We will review your Account every 6 months after the penalty APR is applied. The penalty APR will continue to apply until you have made timely payments with no returned payments during the 6 months being reviewed. |
| **Paying Interest** | Your due date is at least 25 days after the close of each billing period. We will not charge you interest on purchases if you pay each month your entire balance (or, if you have a plan outstanding, your balance adjusted for plans) by the due date. We will begin charging interest on cash advances and balance transfers on the transaction date. |
| **Plan Fee (Fixed Finance Charge)** | **0.00%** introductory monthly plan fee on each purchase amount moved into a plan through your billing period that ends in June, 2022. After that, your monthly plan fee will be up to **1.33%** of each purchase amount moved into a plan based on the plan duration, the APR that would otherwise apply to the purchase, and other factors. |
| **For Credit Card Tips from the Consumer Financial Protection Bureau** | **To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/learnmore** |

| Fees | |
|---|---|
| **Annual Membership Fee** | **None** |
| **Transaction Fees**<br>• Balance Transfer | Either **$5** or **3%** of the amount of each transfer, whichever is greater. Balance transfers are not available. |
| • Cash Advance | Either **$10** or **5%** of the amount of each cash advance, whichever is greater. |
| • Foreign Transaction | **2.7%** of each transaction after conversion to US dollars. |
| **Penalty Fees**<br>• Late Payment<br>• Returned Payment<br>• Overlimit | Up to **$40**.<br>Up to **$40**.<br>**None** |

**How we calculate interest:** We use the Average Daily Balance method (including new transactions). See the *How we calculate interest* section in Part 2.

**Loss of Introductory APR:** We may end your Introductory APR and apply the penalty APR if you do not pay the Minimum Payment Due within 60 days after its Payment Due Date.

**Your Billing Rights:** See Part 2 for information on how to exercise your rights to dispute transactions.

## How Rates and Fees Work

| **Rates** | |
|---|---|
| **Calculating APRs and DPRs** | The Annual Percentage Rate (*APR*) for variable rates is determined by adding an amount (*margin*) to the Prime Rate (see *Determining the Prime Rate* in Part 2). The Daily Periodic Rate (*DPR*) is 1/365th of the APR, rounded to one ten-thousandth of a percentage point. |

| Rate Description | Prime + Margin | APR | DPR |
|---|---|---|---|
| Introductory Purchase | n/a | 0.00% | 0.0000% |
| Purchase | Prime + 20.74% | 23.99% | 0.0657% |
| Balance Transfer | Prime + 20.74% | 23.99% | 0.0657% |
| Cash Advance | Prime + 21.99% | 25.24% | 0.0692% |
| Penalty | Prime + 25.99%* | 29.24% | 0.0801% |

*The variable penalty APR will not exceed 29.99%

| | | |
|---|---|---|
| **Penalty APR for new transactions** | The penalty APR may apply to new transactions if:<br>• you do not pay at least the Minimum Payment Due by the Payment Due Date on one or more occasions; or<br>• your payment is returned by your bank.<br><br>We may also consider your creditworthiness in determining whether or not to apply the penalty APR to your Account. | If the penalty APR applies to a balance, it will apply to charges added to that balance 15 or more days after we send you notice.<br>We will review your Account every 6 months after the penalty APR is applied. The penalty APR will continue to apply until you have made timely payments with no returned payments during the 6 months being reviewed. |

| **Fees** | |
|---|---|
| We add fees to a purchase balance, unless we tell you otherwise. | |
| **Annual Membership** | This fee is on the *Rates and Fees Table* on page 1 of Part 1. |
| **Plan Fee** | Up to 1.33% of each purchase amount moved into a plan based on the plan duration, the APR that would otherwise apply to the purchase amount(s), and other factors. This fee is a fixed finance charge that will be charged each month that a plan is active. The dollar amount of your plan fee will be disclosed when you set up a plan. For more information, see *About the Plan It Feature* in Part 2 of your Cardmember Agreement. |
| **Late Payment** | Up to $40. If we do not receive the Minimum Payment Due by its Payment Due Date, the fee is $29. If this happens again within the next 6 billing periods, the fee is $40. However, the late fee will not exceed the Minimum Payment Due. Paying late may also result in a penalty APR. See *Penalty APR for new transactions* above. |
| **Returned Payment** | Up to $40. If you make a payment that is returned unpaid the first time we present it to your bank, the fee is $29. If you do this again within the same billing period or the next 6 billing periods, the fee is $40. However, the returned payment fee will not exceed the applicable Minimum Payment Due. A returned payment may also result in a penalty APR. See *Penalty APR for new transactions* above. |
| **Returned Check** | $38 if you use your card to cash a check at one of our approved locations and the check is returned unpaid. We will also charge you the unpaid amount. |
| **Overlimit** | None. See *Credit limit and cash advance limit* in Part 2. |
| **Account Re-opening** | $25 if your Account is cancelled, you ask us to re-open it, and we do so. |
| **Balance Transfer** | 3% of the transaction, with a minimum of $5. A different fee may apply if stated in a promotional offer or at the time of a transaction. This fee is a finance charge. We will add it to the same balance as the balance transfer. Balance transfers are not available. |
| **Cash Advance** | 5% of the cash advance transaction (including fees charged by the ATM operator, if any), with a minimum of $10. We will add this fee to the Cash Advance balance. |
| **Foreign Transaction** | 2.7% of the converted U.S. dollar amount. This fee is a finance charge. See Part 2 for *Converting charges made in a foreign currency.* |

**Part 1, Part 2 and any supplements or amendments make up your Cardmember Agreement.**

## Supplement to the Cardmember Agreement

## How Your Reward Program Works

### Blue Cash Everyday®

| How you earn reward dollars | You will earn Blue Cash® Reward Dollars (*reward dollars*) for eligible purchases on your Blue Cash Everyday® Card Account. The number of reward dollars you earn is based on a percentage of the dollar amount of your eligible purchases during the billing period. *Eligible purchases* are purchases made on your Card for goods and services minus returns and other credits.

Eligible purchases do NOT include:
- fees or interest charges,
- balance transfers,
- cash advances,
- purchases of traveler's checks,
- purchases or reloading of prepaid cards,
- purchases of any cash equivalents, or
- person-to-person transactions.

You will earn a reward of:
- 3% on the first $6,000 of eligible purchases in a calendar year at supermarkets located in the U.S. (superstores and warehouse clubs are not considered supermarkets);
- 2% on eligible purchases of gasoline at gas stations located in the U.S. (superstores, supermarkets and warehouse clubs that sell gasoline are not considered gas stations);
- 2% on eligible purchases at select major department stores located in the U.S. (The current list of select major department stores at which you can earn a 2% reward is available at americanexpress.com/rewards-info); and
- 1% on all other eligible purchases. | Merchants are assigned codes based on what they primarily sell. We group certain merchant codes into categories that are eligible for additional rewards. A purchase with a merchant will not earn additional rewards if the merchant's code is not included in a reward category. You may not receive additional rewards if we receive inaccurate information or are otherwise unable to identify your purchase as eligible for a reward category. For example, you may not receive additional rewards when:
- a merchant uses a third-party to sell their products or services; or
- a merchant uses a third-party to process or submit your transaction to us (e.g., using mobile or wireless card readers); or
- you choose to make a purchase using a third-party payment account or make a purchase using a mobile or digital wallet.

For questions about additional rewards on a purchase, call the number on the back of your Card. Please visit **americanexpress.com/rewards-info** for more information about rewards. |
|---|---|---|
| **When you will not earn reward dollars** | You will not earn reward dollars for eligible purchases posted to your Card Account during a billing period if the Minimum Payment Due shown on the statement for that billing period is not paid by the Closing Date of the next billing period. | Credits for eligible purchases will reduce the number of reward dollars you earn. |
| **How you can redeem reward dollars** | You can redeem reward dollars for statement credits whenever your total available reward dollar balance is 25 or more. The statement credit will appear on your Card Account within 3 days and will apply to the billing period in which it appears.  Reward Dollars redeemed for a statement credit cannot be used to pay your Minimum Payment Due.

Redemption will be in the form of a statement credit of $1 for every reward dollar redeemed. Partial reward dollar redemptions will receive an equivalent statement credit amount (e.g., 32.11 reward dollars can be redeemed for a $32.11 statement credit). | From time to time we may, at our option, offer you other ways to redeem reward dollars, such as for gift cards or merchandise. The minimum redemption is 25 reward dollars.

You cannot redeem reward dollars if your Card Account is cancelled or past due. |
| **When you will forfeit reward dollars** | You will forfeit your entire reward dollar balance if your Card Account is cancelled for any reason. | |

| | | |
|---|---|---|
| **The *Reward Dollars Summary*** | The reward dollars shown on your billing statement under the heading *Reward Dollars Summary* is only for informational purposes. It does not show the actual reward dollars that you may be entitled to receive. For example, a credit for eligible purchases posted to your Card Account can lower the reward dollars shown. | If a credit to your Card Account places your eligible purchases in a negative status, the Reward Dollars Summary on your billing statement will show a negative balance. It will continue to show a negative balance until you accumulate eligible purchases exceeding the negative eligible purchases. |
| **Other things you should know about this program** | You will only receive rewards for eligible purchases for personal, family or household use.<br><br>Reward dollars are redeemable for rewards as described above, they are not cash. | We may change the terms of this program at our discretion. If you violate or abuse this program, you may forfeit some or all of your accrued reward dollars. |

27896

## Detail of Changes to Your Cardmember Agreement

This notice amends your American Express Cardmember Agreement ("Cardmember Agreement") as described below. Any terms in the Cardmember Agreement conflicting with these changes are completely replaced. Terms not changed by this notice continue to apply. If you have any questions, please call the number on the back of your Card.

**Effective for Billing Periods having Payment Due Dates on or after May 1, 2021**, your Cardmember Agreement will be amended as follows:

The Supplement to the Cardmember Agreement is amended by deleting the *When you will not receive reward dollars* section and replacing it with the following:

| When you will not receive reward dollars | You will not receive reward dollars for eligible purchases posted to your Card Account during a billing period if the Minimum Payment Due shown on the statement for that billing period is not paid by the Payment Due Date shown on that statement. | Credits for eligible purchases will reduce the number of reward dollars you receive. |
|---|---|---|

Exhibit C - Page 5 of 20

This page intentionally left blank.

Exhibit C - Page 6 of 20

FDR 1122693

**Cardmember Agreement: Part 2 of 2**

Doc 28549

# How Your American Express Account Works

## Introduction

| | | |
|---|---|---|
| **About your Cardmember Agreement** | This document together with Part 1 make up the Cardmember Agreement *(Agreement)* for the *Account* identified on page 1 of Part 1. Any supplements or amendments are also part of the Agreement. | When you use the Account (or you sign or keep the card), you agree to the terms of the Agreement. |
| **Changing the Agreement** | We may change this Agreement, subject to applicable law. We may do this in response to the business, legal or competitive environment. This written Agreement is a final expression of the agreement governing the Account. The written Agreement may not be contradicted by any alleged oral agreement.<br><br>We cannot increase the interest rate on existing balances except in limited circumstances. | Changes to some terms may require 45 days advance notice, and we will tell you in the notice if you have the right to reject a change. We cannot change certain terms during the first year of your Cardmembership. |
| **Words we use in the Agreement** | *We*, *us*, and *our* mean the issuer shown on page 1 of Part 1. *You* and *your* mean the person who applied for this Account and for whom we opened the Account. You and your also mean anyone who agrees to pay for this Account. You are the **Basic Cardmember**. You may request a card for an **Additional Cardmember** (see *About Additional Cardmembers* in Part 2).<br><br>**Card** means any card or other device that we issue to access your Account. A **charge** is any amount added to your Account, such as purchases, cash advances, balance transfers, fees and interest charges. | A **purchase** is a charge for goods, services, or person-to-person transactions. A **cash advance** is a charge to get cash or cash equivalents, including travelers cheques, gift cheques, foreign currency, money orders, digital currency, casino gaming chips, race track wagers, similar offline and online betting transactions, precious metal coins or bullion and digital precious metals products. A **balance transfer** is a charge to pay an amount you owe on another credit card account. A **person-to-person transaction** is a charge for funds sent to another person or a charge to add funds to your Amex Send™ Account. A **plan** is a portion of your account balance that you have selected to pay over time through a set number of monthly payments using Plan It.<br><br>To **pay** by a certain date means to send your payment so that we receive it and credit it to your Account by that date (see *About your payments* in Part 2). |

## About using your card

| | | |
|---|---|---|
| **Using the card** | You may use the card to make purchases. At our discretion, we may permit you to create plans, make cash advances or balance transfers. You cannot transfer balances from any other account issued by us or our affiliates.<br><br>You may arrange for certain merchants and third parties to store your card number and expiration date, so that, for example:<br>• the merchant may charge your account at regular intervals; or<br>• you may make charges using that stored card information. | We may (but are not required to) tell these merchants and third parties if your expiration date or card number changes or if your account status is updated, including if your account is cancelled. If you do not want us to share your updated account information, please contact us using the number on the back of your card.<br><br>Keep your card safe and don't let anyone else use it. If your card is lost or stolen or your Account is being used without your permission, contact us right away. You may not use your Account for illegal activities. |
| **Promise to pay** | You promise to pay all charges, including:<br>• charges you make, even if you do not present your card or sign for the transaction,<br>• charges that other people make if you let them use your Account, and<br>• charges that Additional Cardmembers make or permit others to make. | |
| **Credit limit and cash advance limit** | We assign a *Credit Limit* to your Account. We may make part of your Credit Limit available for cash advances (*Cash Advance Limit*). There may also be a limit on the amount you can withdraw from ATMs in a given period. The Credit Limit and Cash Advance Limit are shown on page 1 of Part 1 and on each billing statement.<br><br>We may increase or reduce your Credit Limit and Cash Advance Limit. We may do so even if you pay on time and your Account is not in default.<br><br>You agree to manage your Account so that: | • your Account balance (including fees and interest) is not more than your Credit Limit, and<br>• your cash advance balance (including fees and interest) is not more than your Cash Advance Limit.<br>We may approve charges that cause your Account balance to go over your Credit Limit. If we do this, we will not charge an overlimit fee. If we ask you to promptly pay the amount of your Account balance above your Credit Limit, you agree to do so. |

Exhibit C - Page 7 of 20

| **Limits on person-to-person transactions** | Your person-to-person transactions may not exceed the **$2,000** person-to-person transactions limit within any 30-day period. | You agree to manage your Account so that the total of your person-to-person transactions in any 30-day period do not exceed the limit on person-to-person transactions. |
| | | We may not approve a person-to-person transaction if it would cause your Account to exceed the person-to-person transaction limit or your Credit Limit. |
| **Declined transactions** | We may decline to authorize a charge. Reasons we may do this include suspected fraud and our assessment of your creditworthiness. This may occur even if the charge would not cause you to go over your Credit Limit | and your Account is not in default. We are not responsible for any losses you incur if we do not authorize a charge. And we are not responsible if any merchant refuses to accept the card. |
| **About the Plan It feature** | We may offer you Plan It, which allows you to create a payment plan for *qualifying purchases* or a *qualifying amount*, subject to a plan fee. This fee is a fixed finance charge that will be charged each month that a plan is active. | Your ability to initiate plans will be based on a variety of factors such as your creditworthiness or your Credit Limit. You will not be able to initiate plans if your Account is cancelled. You will also not be able to initiate plans if one or more of your American Express accounts is enrolled into a debt management program, or has a payment that is returned unpaid, or is delinquent. We will tell you the number of active plans you may have and we may change this number at any time. The plan durations offered to you, and your ability to include multiple qualifying purchases or a qualifying amount in a single plan, will be at our discretion and will be based on a variety of factors such as your creditworthiness, the purchase amount(s), and your Account history. You agree to manage your Account so that the total of your plan balances (including plan fees) is not more than your Credit Limit. |
| | You may use this feature by selecting qualifying purchases or a qualifying amount and a plan duration. You will be able to view the monthly plan payments, including the plan fee, for your selection. Each plan fee will be disclosed prior to your establishing the applicable plan and will be based on the plan duration, the APR that would otherwise apply to the purchase amount(s), and other factors. When you set up a plan, the purchases or amount will be moved to a plan balance and will be subject to a plan fee instead of the APR for purchases. | |
| | A *qualifying purchase* for Plan It is a purchase of at least a specified dollar amount. A *qualifying amount* for Plan It is a specified portion of your balance. These qualifying purchases or a qualifying amount do not include: cash or cash equivalents, purchases subject to Foreign Transaction Fees, or any fees owed to us, including Annual Membership fees. | Plans cannot be cancelled after they have been set up but you can choose to pay them early by paying the New Balance shown on your most recent billing statement in full. If you pay a plan off early, you will not incur any future plan fees on that plan. |

## About your payments

| **When you must pay** | You must pay at least the Minimum Payment Due by the Payment Due Date. The Minimum Payment Due and Payment Due Date are shown on each billing statement. | Minimum Payment Due in such time and manner by the Payment Due Date shown on your billing statement. |
| | Each statement also states the time and manner by which you must make your payment for it to be credited as of the same day it is received. For your payment to be considered on time, we must receive at least the | Each statement also shows a Closing Date. The Closing Date is the last day of the billing period covered by the statement. Each Closing Date is about 30 days after the previous statement's Closing Date. |
| **How to make payments** | Make payments to us in U.S. dollars with: <br>• a single check drawn on a U.S. bank, or <br>• a single negotiable instrument clearable through the U.S. banking system, for example a money order, or <br>• an electronic payment that can be cleared through the U.S. banking system. <br>When making a payment by mail: <br>• make a separate payment for each account, <br>• mail your payment to the address shown on the payment coupon on your billing statement, and <br>• write your Account number on your check or negotiable instrument and include the payment coupon. <br>If your payment meets the above requirements, we will credit it to your Account as of the day we receive it, as long as we receive it by the time disclosed in your billing statement. | If we receive it after that time, we will credit the payment on the day after we receive it. <br>If your payment does not meet the above requirements, there may be a delay in crediting your Account. This may result in late fees and additional interest charges (see *How Rates and Fees Work* on page 2 of Part 1). <br>We will not accept a payment made in a foreign currency or a payment drawn on an account at a bank located outside of the U.S. <br>If we process a late payment, a partial payment, or a payment marked with any restrictive language, that will have no effect on our rights and will not change this Agreement. |
| **How we apply payments and credits** | Your Account may have balances with different interest rates. For example, purchases may have a lower interest rate than cash advances. Your Account may also have plan balances which are assessed plan fees. If your Account has balances with different interest rates, plan balances, or plan fees, here is how we generally apply payments in a billing period: <br>• We apply your payments, up to the Minimum Payment Due, first to any plan amounts included in your Minimum Payment Due, then to the balance subject to the lowest interest rate, and then to balances subject to higher interest rates. | • After the Minimum Payment Due has been paid, we apply your payments to the balance subject to the highest interest rate, then to balances subject to lower interest rates, and then to any plan balances. <br>In most cases, we apply a credit to the same balance as the related charge. For example, we apply a credit for a purchase to the purchase balance. We may apply payments and credits within balances, and among balances with the same interest rate, in any order we choose. If you receive a credit for a purchase placed into a plan, you must call us at the number on the back of your card to have the credit applied to the plan balance. |

Exhibit C - Page 8 of 20

## About your Minimum Payment Due

| | |
|---|---|
| **How we calculate your Minimum Payment Due** | To calculate the Minimum Payment Due for each billing statement, we start with the *highest* of:<br><br>**(1)** Interest charged on the billing statement plus 1% of the New Balance (excluding any interest, penalty fees, overlimit amount, and plan balances); or<br>**(2)** 2% of the New Balance (excluding any penalty fees, overlimit amount, and plan balances); or<br>**(3)** $40.<br><br>Then we add any penalty fees shown on the billing statement, up to 1/24th of any overlimit amount, any plan payment due, and any amount past due.<br><br>Your Minimum Payment Due will not exceed your New Balance. You may pay more than the Minimum Payment Due, up to your New Balance, at any time. | *EXAMPLE: Assume that your New Balance is $2,900, interest is $29.57, and you have no active plans, overlimit amount, penalty fees, or amounts past due.*<br><br>**(1)** *$29.57 + 1% multiplied by ($2,900 - $29.57) = $58.27*<br><br>**(2)** *$58 (2% of $2,900)*<br><br>**(3)** *$40*<br><br>*The highest of (1), (2) or (3) is $58.27*<br><br>*If your account has any active plans, overlimit amount, penalty fees, or amounts past due, your Minimum Payment Due will be higher.* |

## About interest charges

| | |
|---|---|
| **When we charge interest** | • You are not charged interest on purchases when you are in an Interest Free Period.<br>• Your account enters an Interest Free Period when you pay your New Balance as shown on your statement by the Payment Due Date or your account had no previous balance.<br>• When your account is not in an Interest Free Period, we charge interest on purchases from the date of the transaction.<br>• After you enter an Interest Free Period again, interest may appear on your next billing statement. This reflects interest charged from the beginning of that billing cycle through the date the payment was received. | • If you have an active plan created through Plan It, you can enter an Interest Free Period by paying at least the Balance Adjusted for Plans (or Adjusted Balance) by the Payment Due Date.<br>• Balance Transfers and Cash Advances will be charged interest from the date of the transaction and do not have an Interest Free Period.<br><br>For more details about how we calculate your interest charges, see the *How we calculate interest* section of this agreement. |
| **How we calculate interest** | We calculate interest for a billing period by first figuring the interest on each balance. Different categories of transactions--such as purchases and cash advances--may have different interest rates. Balances within each category may also have different interest rates. | |

We use the **Average Daily Balance method (including new transactions)** to figure interest charges for each balance. The total interest charged for a billing period is the sum of the interest charged on each balance.

**Interest**

The interest charged for a balance in a billing period, except for variations caused by rounding, equals:

• Average Daily Balance (*ADB*) multiplied by
• Daily Periodic Rate (*DPR*) multiplied by
• number of days the DPR was in effect.

**ADB**

To get the ADB for a balance, we add up its *daily balances*. Then we divide the result by the number of days the DPR for that balance was in effect. If the daily balance is negative, we treat it as zero.

**DPR**

A DPR is 1/365th of an APR, rounded to one tenthousandth of a percentage point. Your DPRs are shown in *How Rates and Fees Work* on page 2 of Part 1.

*EXAMPLE: Calculating Interest*

*Assume that you have a single interest rate of 15.99%, your ADB is $2,250 and there are 30 days in the billing period.*

*The **DPR** is 15.99% divided by 365 days = 0.0438%*

*The **Interest** is $2,250 multiplied by 0.0438% multiplied by 30 days = $29.57*

**Daily Balance**

For each day a DPR is in effect, we figure the daily balance by:

• taking the *beginning balance* for the day,
• adding any new charges,
• subtracting any payments or credits; and
• making any appropriate adjustments.

We add a new charge to a daily balance as of its transaction date.

**Beginning balance**

For the first day of a billing period, the beginning balance is the ending balance for the prior billing period, including unpaid interest. For the rest of the billing period, the beginning balance is the previous day's daily balance *plus an amount of interest equal to the previous day's daily balance multiplied by the DPR for that balance. This method of figuring the beginning balance results in daily compounding of interest.*

When an interest rate changes, the new DPR may come into effect during--not just at the beginning of--the billing period. When this happens, we will create a new balance and apply the new DPR to it. To get the beginning balance on the first day for this new balance, we multiply the previous day's daily balance by the old DPR and add the result to that day's daily balance.

**Other methods**

To figure the ADB and interest charges, we may use other formulas or methods that produce equivalent results. Also, we may choose not to charge interest on certain types of charges.

| **Determining the Prime Rate** | We use the Prime Rate from the rates section of *The Wall Street Journal*. The Prime Rate for each billing period is the Prime Rate published in *The Wall Street Journal* on the Closing Date of the billing period. |
| | *The Wall Street Journal* may not publish the Prime Rate on that day. If it does not, we will use the Prime Rate from the previous day it was published. If *The Wall Street Journal* is no longer published, we may use the Prime Rate from any other newspaper of general circulation in New York, New York. Or we may choose to use a similar published rate. |
| | If the Prime Rate increases, variable APRs (and corresponding DPRs) will increase. In that case, you may pay more interest and may have a higher Minimum Payment Due. When the Prime Rate changes, the resulting changes to variable APRs take effect as of the first day of the billing period. |

## Other important information

| **Military Lending Act** | Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee (other than certain participation fees for a credit card account). |
| | To listen to this statement, as well as a description of your payment obligation for this Account, call us at **855-531-0379.** |
| | If you are a covered borrower, the Claims Resolution section of this Agreement will not apply to you in connection with this Account. Instead, the *Claims Resolution for Covered Borrowers* section will apply. |
| **About Additional Cardmembers** | At your request, we may issue cards to Additional Cardmembers. They do not have accounts with us but they can use your Account subject to the terms of this Agreement. We may report an Additional Cardmember's use of your Account to credit reporting agencies. | If you want to cancel an Additional Cardmember's right to use your Account (and cancel their card) you must tell us. |
| | You are responsible for all use of your Account by Additional Cardmembers and anyone they allow to use your Account. You must pay for all charges they make. | If an Annual Membership fee applies for an Additional Card, please refer to the refund policy disclosed in the *Closing your Account* sub-section of your Cardmember Agreement. If a single Annual Membership fee applies for a group of Additional Cards on your Account, this policy will apply when you cancel the first or oldest Additional Card. If an Annual Membership fee applies to Additional Cards on your Account, it is shown on page 2 of Part 1 of the Cardmember Agreement. |
| | You authorize us to give Additional Cardmembers information about your Account and to discuss it with them. | |
| **Converting charges made in a foreign currency** | If you make a charge in a foreign currency, AE Exposure Management Ltd. ("AEEML") will convert it into U.S. dollars on the date we or our agents process it, so that we bill you for the charge in U.S. dollars based upon this conversion. Unless a particular rate is required by law, AEEML will choose a conversion rate that is acceptable to us for that date. The rate AEEML uses is no more than the highest official rate published by a government agency or the highest interbank rate AEEML identifies from customary banking sources on the conversion date or the prior business day. This rate may differ from rates that are in effect on the date of your charge. We will bill charges converted by establishments (such as airlines) at the rates they use. |
| **Changing your billing address** | You must notify us immediately if you change the:<br>• mailing address to which we send billing statements; or<br>• e-mail address to which we send notice that your billing statement is available online. | If you have more than one account, you need to notify us separately for each account.<br><br>We may update your billing address if we receive information that it has changed or is incorrect. |
| **Closing your Account** | You may close your Account by calling us or writing to us. |
| | If an Annual Membership fee applies, we will refund this fee if you notify us that you are voluntarily closing your Account within 30 days of the Closing Date of the billing statement on which that fee appears. For cancellations after this 30 day period, the Annual Membership fee is non-refundable. If an Annual Membership fee applies to your Account, it is shown on page 1 and page 2 of Part 1 of the Cardmember Agreement. |
| | If your billing address is in the Commonwealth of Massachusetts at the time you close your account, this policy will not apply to you. |
| **Cancelling or suspending your Account** | We may:<br>• cancel your Account,<br>• suspend the ability to make charges,<br>• cancel or suspend any feature on your Account, and<br>• notify merchants that your Account has been cancelled or suspended.<br><br>If we do any of these, you must still pay us for all charges under the terms of this Agreement. | We may do any of these things at our discretion, even if you pay on time and your Account is not in default.<br><br>If your Account is cancelled, you must destroy your cards.<br><br>We may agree to reinstate your Account after a cancellation. If we do this, we may:<br>• reinstate any additional cards issued on your Account,<br>• charge you any applicable annual fees, and<br>• charge you a fee for reinstating the Account. |

| | |
|---|---|
| **About default** | We may consider your Account to be in default if: <br> • you violate a provision of this Agreement, <br> • you give us false information, <br> • you file for bankruptcy, <br> • you default under another agreement you have with us or an affiliate, <br> • you become incapacitated or die, or <br> • we believe you are unable or unwilling to pay your debts when due. |
| | If we consider your Account in default, we may, to the extent permitted by federal and applicable state law: <br> • suspend your ability to make charges, <br> • cancel or suspend any feature on your Account, <br> • require you to pay more than your Minimum Payment Due immediately, and <br> • require you to pay your Account balance immediately. |
| **Collection costs** | You agree to pay all reasonable costs, including attorneys' fees, that we incur to collect amounts you owe. |
| **Credit reports** | You agree that we will obtain credit reports about you, investigate your ability to pay, and obtain information about you from other sources including information to verify and re-verify your employment and income. And you agree that we will use such information for any purposes (for example, marketing to you or evaluating you for a new account), subject to applicable law. <br><br> You agree that we will give information about the Account to credit reporting agencies. We will tell a credit reporting agency if you fail to comply with any term of this Agreement. This may have a negative impact on your credit report. <br><br> If you believe information we have given to a credit reporting agency is incorrect, write to us at: American Express Credit Bureau Unit, P.O. Box 981537, El Paso, TX 79998-1537. When you write to us, tell us the specific information you believe is incorrect. |
| **Sending you notices** | We mail you notices through the U.S. mail, postage prepaid, and address them to you at the latest billing address on our records. Any notice that we send you this way is deemed to be given when deposited in the U.S. mail. |
| **We may contact you** | **Servicing and Collections** <br> If we need to contact you to service your account or to collect amounts you owe, you authorize us (and our affiliates, agents and contractors, such as debt collection agencies and service providers) to contact you at any phone number or email address you provide, from which you contact us, or at which we believe we can reach you. We may contact you in any way, such as calling, texting, emailing, sending mobile application push notifications or using any other method of communication permitted by law. We may contact you using an automated dialer or prerecorded messages. We may contact you on a mobile, wireless or similar device, even if you are charged for it. <br> **Call monitoring** <br> We may monitor and record any calls between you and us. |
| **About insurance products** | We or our affiliates may tell you about insurance and non-insurance products, services or features that may have a fee. One of our affiliates may act on behalf of a provider of these products. The affiliate may be compensated for this. The insurance products are not offered or sold by us or on our behalf. Our affiliates may get additional compensation when AMEX Assurance Company or another affiliate is the insurer or reinsurer. Compensation may influence what products and providers we or our affiliates tell you about. <br><br> We may share information about you with our affiliates so they can identify products that may interest you. We may be compensated for this information. |
| **How we handle electronic debits from your checking account** | When you pay us by check, you authorize us to electronically deduct the amount from your bank or other asset account. <br> We may process the check electronically by transmitting to your financial institution: <br> • the amount, <br> • the routing number, <br> • the account number, and <br> • the check serial number. |
| | If we do this, your payment may be deducted from your bank or other asset account on the same day we receive your check. Also, you will not receive that cancelled check with your bank or asset account billing statement. <br><br> If we cannot collect the funds electronically, we may issue a draft against your bank or other asset account for the amount of the check. |
| **Privacy Act of 1974 notice** | Some federal agencies may accept the card under authority of statute. When you make charges at these agencies, we collect certain charge information. That information may be put to routine uses such as processing, billing and collections. It may also be aggregated for reporting, analysis and marketing use. Other routine uses by agencies may be published in the Federal Register. |
| **Convenience checks** | Convenience checks (including balance transfer checks) are checks that we may send you to access your Account. The following terms will apply to use of those checks unless otherwise disclosed with the check. <br> If you use a convenience check, we may decline it. If we decline it, you may have to pay returned check fees or other penalties to whomever you wrote the check. <br> If you use a convenience check and we honor it, we will charge interest beginning as of the date we receive the check. You cannot avoid paying interest on convenience check transactions. <br> We will charge a fee for each convenience check transaction. This fee is 3% of the transaction, with a minimum of $5. This fee is a finance charge. We will |
| | add the fee to the same balance that we add the convenience check transaction to. <br> We will charge $29 each time you ask us to stop payment on a convenience check. <br> A convenience check is not a card. You may not use convenience checks to pay this or any other account with us or our affiliates. If you use a convenience check, we will apply the: <br> • cash advance APR if you make it payable to cash, to you, or to a bank, brokerage or similar asset account, or to a mortgage or insurance provider. <br> • purchase APR if you make it payable to a merchant. <br> • balance transfer APR if you use it to transfer a balance from another creditor. <br> • penalty APR if it applies to your Account. |
| **Changing benefits** | We have the right to add, modify or delete any benefit, service, or feature of your Account at our discretion. |
| **Assigning the Agreement** | We may sell, transfer or assign this Agreement and your Account. We may do so at any time without notifying you. You may not sell, assign or transfer your Account or any of your obligations under this Agreement. |
| **Assigning claims** | If you dispute a charge with a merchant, we may credit the Account for all or part of the disputed charge. If we do so, you assign and transfer to us all rights and claims (excluding tort claims) against the merchant. You agree that you will not pursue any claim against the merchant for the credited amount. And you must cooperate with us if we decide to do so. |

Exhibit C - Page 11 of 20

| **We do not waive our rights** | We may choose to delay enforcing or to not exercise rights under this Agreement. If we do this, we do not waive our rights to exercise or enforce them on any other occasion. | |
|---|---|---|
| **Governing law** | Utah law and federal law govern this Agreement and your Account. They govern without regard to internal principles of conflicts of law. We are located in Utah. We hold your Account in Utah. We entered into this Agreement with you in Utah. | In addition, if your billing address is in the State of Maryland, to the extent, if any, that Maryland law applies to your account, we elect to offer your card account pursuant to Title 12, Subtitle 9 of the Maryland Commercial Law Article. |
| **Notice to Oregon Residents** | Service charges in excess of those permitted by law will be charged on the outstanding balances from month to month. You may pay more than the Minimum Payment Due, up to your entire outstanding balance, at any time. | |
| **Notice for residents of Washington State** | In accordance with the Revised Code of Washington Statutes, Section 63.14.167, you are not responsible for payment of interest charges that result solely from a merchant's failure to transmit to us within seven working days a credit for goods or services accepted for return or forgiven if you have notified us of the merchant's delay in posting such credit, or our failure to post such credit to your account within three working days of our receipt of the credit. | |

# Claims Resolution

Most customer concerns can be resolved by calling our Customer Service Department at the number listed on the back of your card. In the event Customer Service is unable to resolve a complaint to your satisfaction, this section explains how claims can be resolved through mediation, arbitration or litigation. It includes an arbitration provision. **You may reject the arbitration provision by sending us written notice within 45 days after your first card purchase. See *Your Right to Reject Arbitration* below.**

For this section, *you* and *us* includes any corporate parents, subsidiaries, affiliates or related persons or entities. *Claim* means any current or future claim, dispute or controversy relating to your Account(s), this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. *Claim* includes but is not limited to: (1) initial claims, counterclaims, crossclaims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements, or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. You may not sell, assign or transfer a claim.

## Sending a Claim Notice

Before beginning a lawsuit, mediation or arbitration, you and we agree to send a written notice (a *claim notice*) to each party against whom a claim is asserted, in order to provide an opportunity to resolve the claim informally or through mediation. Go to americanexpress.com/claim for a sample claim notice. The claim notice must describe the claim and state the specific relief demanded. Notice to you may be provided by your billing statement or sent to your billing address. Notice to us must include your name, address and Account number and be sent to American Express ADR c/o CT Corporation System, 28 Liberty Street, New York, New York 10005. If the claim proceeds to arbitration, the amount of any relief demanded in a claim notice will not be disclosed to the arbitrator until after the arbitrator rules.

## Mediation

In mediation, a neutral mediator helps parties resolve a claim. The mediator does not decide the claim but helps parties reach agreement.

Before beginning mediation, you or we must first send a claim notice. Within 30 days after sending or receiving a claim notice, you or we may submit the claim to JAMS (1-800-352-5267, jamsadr.com) or the American Arbitration Association ("AAA") (1-800-778-7879, adr.org) for mediation. We will pay the fees of the mediator. All mediation-related communications are confidential, inadmissible in court and not subject to discovery.

All applicable statutes of limitation will be tolled from the date you or we send the claim notice until termination of the mediation. Either you or we may terminate the mediation at any time. The submission or failure to submit a claim to mediation will not affect your or our right to elect arbitration.

## Arbitration

You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.

**If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's authority is limited to claims between you and us alone. Claims may not be joined or consolidated unless you and we agree in writing. An arbitration award and any judgment confirming it will apply only to the specific case and cannot be used in any other case except to enforce the award. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.**

## Initiating Arbitration

Before beginning arbitration, you or we must first send a claim notice. Claims will be referred to either JAMS or AAA, as selected by the party electing arbitration. Claims will be resolved pursuant to this Arbitration provision and the selected organization's rules in effect when

the claim is filed, except where those rules conflict with this Agreement. If we choose the organization, you may select the other within 30 days after receiving notice of our selection. Contact JAMS or AAA to begin an arbitration or for other information. Claims also may be referred to another arbitration organization if you and we agree in writing or to an arbitrator appointed pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. sec. 1-16 (*FAA*).

We will not elect arbitration for any claim you file in small claims court, so long as the claim is individual and pending only in that court. You or we may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered. Either you or we may delay enforcing or not exercise rights under this Arbitration provision, including the right to arbitrate a claim, without waiving the right to exercise or enforce those rights.

## Limitations on Arbitration

**If either party elects to resolve a claim by arbitration, that claim will be arbitrated on an individual basis. There will be no right or authority for any claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of the general public, other cardmembers or other persons similarly situated.**

Notwithstanding any other provision and without waiving the right to appeal such decision, if any portion of these *Limitations on Arbitration* is deemed invalid or unenforceable, then the entire Arbitration provision (other than this sentence) will not apply.

## Arbitration Procedures

This Arbitration provision is governed by the FAA. The arbitrator will apply applicable substantive law, statutes of limitations and privileges. The arbitrator will not apply any federal or state rules of civil procedure or evidence in matters relating to evidence or discovery. Subject to the *Limitations on Arbitration*, the arbitrator may otherwise award any relief available in court. You and we agree that the arbitration will be confidential. You and we agree that we will not disclose the content of the arbitration proceeding or its outcome to anyone, but you or we may notify any government authority of the claim as permitted or required by law.

If your claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents,

through a telephonic hearing, or by an in-person hearing. At any party's request, the arbitrator will provide a brief written explanation of the award. The arbitrator's award will be final and binding, subject to each party's right to appeal as stated in this section and/or to challenge or appeal an arbitration award pursuant to the FAA. To initiate an appeal, a party must notify the arbitration organization and all parties in writing within 35 days after the arbitrator's award is issued. The arbitration organization will appoint a three-arbitrator panel to decide anew, by majority vote based on written submissions, any aspect of the decision objected to. The appeal will otherwise proceed pursuant to the arbitration organization's appellate rules. Judgment upon any award may be entered in any court having jurisdiction. At your election, arbitration hearings will take place in the federal judicial district of your residence.

### Arbitration Fees and Costs

You will be responsible for paying your share of any *arbitration fees* (including filing, administrative, hearing or other fees), but only up to the amount of the filing fees you would have incurred if you had brought a claim in court. We will be responsible for any additional arbitration

fees. At your written request, we will consider in good faith making a temporary advance of your share of any arbitration fees, or paying for the reasonable fees of an expert appointed by the arbitrator for good cause.

### Additional Arbitration Awards

If the arbitrator rules in your favor for an amount greater than any final offer we made before the final hearing in arbitration, the arbitrator's award will include: (1) any money to which you are entitled, but in no case less than $5,000; and (2) any reasonable attorneys' fees, costs and expert and other witness fees.

### Your Right to Reject Arbitration

You may reject this Arbitration provision by sending a written *rejection notice* to us at: American Express, P.O. Box 981556, El Paso, TX 79998. Go to americanexpress.com/reject for a sample rejection notice. Your rejection notice must be mailed within 45 days after your first card purchase. Your rejection notice must state that you reject the Arbitration provision and include your name, address, Account number and personal signature. No one else may sign the rejection notice. If your rejection notice complies with these requirements, this

Arbitration provision and any other arbitration provisions in the cardmember agreements for any other currently open American Express accounts you have will not apply to you, except for Corporate Card accounts and any claims subject to pending litigation or arbitration at the time you send your rejection notice. Rejection of this Arbitration provision will not affect your other rights or responsibilities under this Claims Resolution section or the Agreement. Rejecting this Arbitration provision will not affect your ability to use your card or any other benefit, product or service you may have with your Account.

### Continuation

This section will survive termination of your Account, voluntary payment of your Account balance, any legal proceeding to collect a debt, any bankruptcy and any sale of your Account (in the case of a sale, its terms will apply to the buyer of your Account). If any portion of this Claims Resolution section, except as otherwise provided in the *Limitations on Arbitration* subsection, is deemed invalid or unenforceable, it will not invalidate the remaining portions of this Claims Resolution section.



# Claims Resolution for Covered Borrowers

Most customer concerns can be resolved by calling our Customer Service Department at the number listed on the back of your Card. In the event Customer Service is unable to resolve a complaint to your satisfaction, this section explains how claims can be resolved through litigation, non-binding mediation or, at your election, arbitration. You are not required to resolve any claims by mediation and arbitration. For this section, *you* and *us* includes any corporate parents, subsidiaries, affiliates or related persons or entities. *Claim* means any current or future claim, dispute or controversy relating to your Card account, this Agreement, or any agreement or relationship you have or had with us, except for the validity, enforceability or scope of the Arbitration provision. *Claim* includes but is not limited to: (1) initial claims, counterclaims, cross-claims and third-party claims; (2) claims based upon contract, tort, fraud, statute, regulation, common law and equity; (3) claims by or against any third party using or providing any product, service or benefit in connection with any account; and (4) claims that arise from or relate to (a) any account created under any of the agreements or any balances on any such account, (b) advertisements, promotions or statements related to any accounts, goods or services financed under any accounts or terms of financing, (c) benefits and services related to Card membership (including fee-based or free benefit programs, enrollment services and rewards programs) and (d) your application for any account. You may not sell, assign or transfer a claim.

### Sending a Claim Notice

Before beginning a lawsuit, arbitration or non-binding mediation, you may send a written notice (a *claim notice*) to us. Go to americanexpress.com/claim for a sample claim notice. The claim notice should describe the claim and state the specific relief demanded. We may also request that we resolve a claim by mediation or arbitration, but you are not required to accept

our request. We may include our request with your billing statement or mail it to your home address. Notice to us must include your name, address and Account number and be sent to American Express ADR c/o CT Corporation System, 28 Liberty Street, New York, New York 10005. If the claim proceeds to litigation, mediation or arbitration, the amount of any relief demanded in a claim notice will not be disclosed. *You are not required to resolve your claim through mediation or arbitration. You may decline our request to resolve a claim through mediation or arbitration. You may elect to resolve your claim through litigation.*

### Mediation

If you elect to resolve your claim through mediation, a neutral mediator will help resolve the claim. The mediator does not decide the claim but helps parties reach agreement. Before beginning mediation, you or we must first send a claim notice. Within 30 days after sending or receiving a claim notice, you or we may submit the claim to JAMS (1-800-352-5267, jamsadr.com) or the American Arbitration Association ("AAA") (1-800-778-7879, adr.org) for mediation. We will pay the fees of the mediator. All mediation-related communications are confidential, inadmissible in court and not subject to discovery. All applicable statutes of limitation will be tolled from the date you or we send the claim notice until termination of the mediation. Either you or we may terminate the mediation at any time. The submission or failure to submit a claim to mediation will not affect your or our right to elect litigation or arbitration. *The outcome of mediation proceedings is non-binding. You may proceed to litigation or arbitration regardless of the outcome of mediation.*

### Arbitration

You may elect, but are not required, to resolve any claim by individual arbitration. We may

also request to resolve any claim by individual arbitration, but you are not required to accept our request. Claims are decided by a neutral arbitrator.

**If you elect or agree to resolve a claim through arbitration, your or our right to litigate that claim in court or have a jury trial on that claim may be limited. Further, you and we may not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's authority is limited to claims between you and us alone. Claims may not be joined or consolidated unless you and we agree in writing. An arbitration award and any judgment confirming it will apply only to the specific case and cannot be used in any other case except to enforce the award. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.**

### Initiating Arbitration

If you and we agree to proceed to arbitration, claims will be referred to either JAMS or AAA, as selected by the party electing arbitration. Claims will be resolved pursuant to this Arbitration provision and the selected organization's rules in effect when the claim is filed, except where those rules conflict with this Agreement.

If we choose the organization, you may select the other within 30 days after receiving notice of our selection.

Contact JAMS or AAA to begin an arbitration or for other information. Claims also may be referred to another arbitration organization if

you and we agree in writing or to an arbitrator appointed pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. sec. 1-16 (**FAA**). We will not request arbitration for any claim you file in small claims court, so long as the claim is individual and pending only in that court. You may otherwise elect to arbitrate any claim at any time unless it has been filed in court and trial has begun or final judgment has been entered.

**Limitations on Arbitration**
**If the parties agree to resolve a claim by arbitration, that claim will be arbitrated on an individual basis pursuant to that agreement, and the agreement would not allow claims to be arbitrated on a class action basis or on bases involving claims brought in a purported representative capacity on behalf of the general public, other Cardmembers, or other persons similarly situated.**

Notwithstanding any other provision and without waiving the right to appeal such decision, if any portion of these *Limitations on Arbitration* provisions is deemed invalid or unenforceable, then the entire Arbitration provision (other than this sentence) will not apply.

**Arbitration Procedures**
This Arbitration provision is governed by the FAA. The arbitrator will apply applicable substantive law, statutes of limitations and privileges. The arbitrator will not apply any federal or state rules of civil procedure or evidence in matters relating to evidence or discovery. Subject to the *Limitations*

*on Arbitration* provisions, the arbitrator may otherwise award any relief available in court. You and we agree that the arbitration will be confidential. You and we agree that we will not disclose the content of the arbitration proceeding or its outcome to anyone, but you or we may notify any government authority of the claim as permitted or required by law. If your claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents, through a telephonic hearing, or by an in person hearing. At any party's request, the arbitrator will provide a brief written explanation of the award. The arbitrator's award will be final and binding, subject to each party's right to appeal as stated in this section and/or to challenge or appeal an arbitration award pursuant to the FAA. To initiate an appeal, a party must notify the arbitration organization and all parties in writing within 35 days after the arbitrator's award is issued. The arbitration organization will appoint a three-arbitrator panel to decide anew, by majority vote based on written submissions, any aspect of the decision objected to. The appeal will otherwise proceed pursuant to the arbitration organization's appellate rules. Judgment upon any award may be entered in any court having jurisdiction. At your election, arbitration hearings will take place in the federal judicial district of your residence.

**Arbitration Fees and Costs**
You will be responsible for paying your share of any *arbitration fees* (including filing, administrative, hearing or other fees), but only up to the amount of the filing fees you would have incurred if you had brought a claim in court. We will be responsible for any additional arbitration fees. At your written request, we will consider in good faith making a temporary advance of your share of any arbitration fees, or paying for the reasonable fees of an expert appointed by the arbitrator for good cause.

**Additional Arbitration Awards**
If the arbitrator rules in your favor for an amount greater than any final offer we made before the final hearing in arbitration, the arbitrator's award will include: (1) any money to which you are entitled, but in no case less than $5,000; and (2) any reasonable attorneys' fees, costs and expert and other witness fees.

**Continuation**
This section will survive termination of your Account, voluntary payment of your Account balance, any legal proceeding to collect a debt, any bankruptcy and any sale of your Account (in the case of a sale, its terms will apply to the buyer of your Account). If any portion of this Claims Resolution section, except as otherwise provided in the *Limitations on Arbitration* subsection, is deemed invalid or unenforceable, it will not invalidate the remaining portions of this Claims Resolution section.

---

# Your Billing Rights: Keep this Document for Future Use

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

**What To Do If You Find a Mistake on Your Statement**
If you think there is an error on your statement, write to us at:

American Express
PO Box 981535
El Paso TX 79998-1535

In your letter, give us the following information:
- *Account information*: Your name and account number.
- *Dollar amount*: The dollar amount of the suspected error.
- *Description of problem*: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 2 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
- *If we made a mistake*: You will not have to pay the amount in question or any interest or other fees related to that amount.
- *If we do not believe there was a mistake*: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**
If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at:

American Express
PO Box 981535
El Paso TX 79998-1535

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

---

# Your Agreement for Transferring Funds Electronically

This *EFT Agreement* is between American Express Travel Related Services Company, Inc. and you, once you enroll in an Electronic Funds Transfer Service of ours (*service*) such as AutoPay, Pay By Computer, or Pay By Phone. This replaces any previous agreement you may have with us for the services.

**Words we use in this agreement**

In this EFT Agreement, *you* and *your* mean, in addition to the Basic Cardmember, any Additional Cardmembers who have enrolled in the service. *We, our,* and *us* mean American Express Travel Related Services Company, Inc. Your *card account* means the American Express card account. Your *bank* is the bank, securities firm, or other financial institution that holds your bank account. Your *bank account* is the bank account you use to pay for any transactions you make through the service. *Withdraw or withdrawal* means an electronic debit or deduction of funds from your bank account. Our *business days* are Monday through Friday, excluding holidays.

**AutoPay, Pay By Computer, Pay By Phone**

With these services, you can initiate electronic payments to your card account. When you do so, you allow us or our agent to draw a check on or initiate an automated clearing house (*ACH*) withdrawal from your bank account in the amount you authorize.

If your bank returns a check or ACH withdrawal unpaid the first time we submit it for payment, we may cancel your right to use the service. Your bank may charge you a fee if this happens.

**How to contact us about the services**

You can call us at 1-800-IPAY-AXP for Pay By Phone questions, at 1-800-528-2122 for Pay By Computer questions, and at 1-800-528-4800 for AutoPay questions. You may also write to us at American Express, Electronic Funds Services, P.O. Box 981531, El Paso, TX 79998-1531.

**How to stop AutoPay payments**

If you have told us to make AutoPay payments from your bank account, you can stop any of these payments by calling us at 1-800-227-4669 or writing to American Express, Electronic Funds Services, P.O. Box 981540, El Paso, TX 79998-1540 in time for us to receive your request at least 2 business days before the payment is scheduled to be made. We will tell you, at least 10 days before each payment, when it will be made and how much it will be. If we receive your request to stop one of these payments at least 2 business days before the payment is scheduled to be made and we do not stop it, we will be liable for your losses or damages.

**Unauthorized transactions**

Tell us AT ONCE if you believe that a transaction has been made without your permission using your card or information about your card account. Calling is the best way of keeping your possible losses down. You could lose all the money in your bank account (plus your maximum overdraft line of credit, if applicable).

Call anytime at 1-800-528-4800 (or 1-336-393-1111 collect, if not in the U.S.). You may also write to us at American Express, Electronic Funds Services, P.O. Box 981532, El Paso, TX 79998-1532.

**Improper transactions or payments**

If we do not complete a transfer to or from your bank account on time or in the correct amount, according to this EFT Agreement, we will be liable for your losses or damages.

There are some exceptions. We are not liable:

- if, through no fault of ours, you do not have enough money in your bank account;
- if the transfer would go over the credit limit on any overdraft line you may have;
- if the funds in your bank account were subject to legal process or other encumbrance that restricted the transaction;
- if circumstances beyond our control (such as fire or flood) prevented the transaction, despite our reasonable precautions; or
- if the terminal or system was not working properly and you knew about the breakdown when you started the transfer.

**Privacy**

We will disclose information to third parties about your transactions:

- when necessary for completing transactions;
- to comply with government agency or court orders; or
- as stated in our Privacy Notice, which covers your use of the services.

**Arbitration**

The *Claims Resolution* section or, as applicable, the *Claims Resolution for Covered Borrowers* section, in Part 2 of the Cardmember Agreement, applies to this EFT Agreement and the services.

**In case of errors or questions**

If you think your statement or receipt is wrong, or if you need more information about a transaction on your statement or receipt, call or write us as soon as you can. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. If you do not contact us because of certain circumstances (such as you are in the hospital), we may extend the 60-day period for a reasonable time. When you contact us:

- tell us your name and account number.
- describe the error or the transaction you are unsure about. Explain as clearly as you can why you believe it is an error or why you need more information.
- tell us the amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days after you called us. Within 10 business days after we hear from you we will determine whether an error has occurred. We will correct any error promptly. However, if we need more time, we may take up to 45 calendar days to investigate. If we do take more time, we will credit your bank account within 10 business days for the amount you think is in error so that you will have use of the funds during the time it takes to complete our investigation.

If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your bank account for the amount you question.

We will tell you the results within 3 business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for

copies of the documents that we used in our investigation. If we have credited your bank account and find no error, we will tell you when we will withdraw that amount from your bank account again. You authorize us to withdraw this amount from your bank account. If your bank account does not have enough funds to cover this withdrawal, we can charge the amount to your card account or collect the amount from you. If this happens, we may cancel your right to use a service.

**We may end the services**

We may extend or limit the services at any location without telling you ahead of time. Also, we may stop a service at any time.

We may cancel your participation in a service at any time. If we do, we will write to you, but we may not send you the notice until after we cancel. Also, we may refuse to authorize a transaction at our discretion.

We will end or suspend use of a service if:

- you do not use it for 18 months in a row,
- your card account is in default,
- your card account is cancelled or suspended,
- you cancel the authorization you gave your bank to pay for any transactions you make through the service, or
- your bank account is closed to withdrawals by us or our agents.

You may choose to stop using any service. If you do, you must write to us at American Express, Electronic Funds Services, P.O. Box 981531, El Paso, TX 79998-1531.

**Assignment**

We may assign this EFT Agreement to a subsidiary or affiliate at any time.

## Note for Massachusetts residents

**General disclosure statement:** Any documentation given to you which shows that an electronic funds transfer was made will be admissible as evidence of that transfer and will constitute prima facie proof that the transfer was made.

Except as explained in this EFT Agreement, if you initiate an electronic funds transfer from your bank account, you cannot stop payment of the transfer.

**Unless otherwise provided in this EFT Agreement, you may not stop payment of electronic funds transfers. Therefore, you should not use electronic transfers for purchases or service unless you are satisfied that you will not need to stop payment.**

**Disclosure of bank account information to third parties:** If you give us your written authorization to disclose information about you, your bank account, or the transactions that you make to any person, that authorization will automatically expire 45 days after we receive it.

**Optional limit on obtaining cash:** You can ask us to limit the total amount of cash that you may get from ATMs in a single day to $50. If you choose this option, we will take all reasonable steps to comply with your request.

Exhibit C - Page 15 of 20

This page intentionally left blank

Exhibit C - Page 16 of 20

Rev. 4/2018

| FACTS | WHAT DOES AMERICAN EXPRESS DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security number and income<br>• transaction history and account history<br>• insurance claim history and credit history |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons American Express chooses to share; and whether you can limit this sharing. |

| Reasons we can share personal information | Does American Express share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes -** to offer our products and services to you | Yes | No (but please see the "To limit direct marketing" box below for information about additional privacy choices) |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes -** information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes -** information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For nonaffiliates to market to you** | No (although we may share aggregated or de-identified data) | We don't share personal information |

| To limit our sharing | • Visit us online: www.americanexpress.com/communications or<br>• Call 1-855-297-7748 - our menu will prompt you through your choice(s)<br><br>**Please note**:<br><br>If you are a *new* customer, we can begin sharing your personal information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your personal information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| To limit direct marketing | We provide additional privacy choices to customers. Privacy elections you make for any one product or service may not automatically be applied to other products and services. To let us know if you do not want us to use your personal information to communicate with you about offers by mail, telephone, and/or e-mail:<br><br>• Visit us online: www.americanexpress.com/communications or<br>• Call 1-855-297-7748 (except for choices about e-mail communications) |
| Questions? | Call 1-800-528-4800 or go to www.americanexpress.com/contact. |

Exhibit C - Page 17 of 20

| Who we are | |
|---|---|
| **Who is providing this Notice** | American Express Travel Related Services Company, Inc. and other American Express Affiliates that provide financial products or services, including American Express National Bank and AMEX Assurance Company. |

| What we do | |
|---|---|
| **How does American Express protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does American Express collect my personal information?** | We collect your personal information, for example, when you<br>• open an account or pay your bills<br>• give us your income information or give us your contact information<br>• use your credit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing of personal information?** | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Our affiliates include companies with the American Express name, including financial companies such as American Express Travel Related Services Company, Inc. and nonfinancial companies. Affiliates may also include other companies related by common ownership or control, such as AMEX Assurance Company, a provider of American Express Card-related insurance services.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Nonaffiliates with which we share personal information include service providers, including, for example, direct marketers, that perform services or functions on our behalf.* |
| **Joint marketing** | A formal agreement between nonaffiliated companies that together market financial products or services to you.<br>• *Our joint marketing partners include financial companies.* |

| Other important information |
|---|
| We may transfer personal information to other countries, for example, for customer service or to process transactions.<br><br>**AMEX Assurance Company customers**. You may have the right to access and correct recorded personal information. Personal information may be disclosed by us to detect fraud or misrepresentation, to verify insurance coverage, to an insurance regulatory authority, law enforcement or other governmental authority pursuant to law, or to a group policyholder for purposes of reporting claims experience or conducting an audit. Personal information related to insurance claim activity obtained from a report prepared by an insurance-support organization on our behalf may be retained by such organization and disclosed as required by law. State law may be more protective than federal law.<br><br>**California**: If your American Express account has a California billing address, we will not share your personal information except to the extent permitted under California law.<br><br>**Vermont**: If your American Express account has a Vermont billing address, we will automatically treat your account as if you have directed us not to share information about your creditworthiness with our Affiliates. |

Exhibit C - Page 18 of 20

1122653 28569

# SUMMARY OF ADDITIONAL BENEFITS

**Below is a summary of your benefits. To view the full Terms and Conditions please visit us at www.americanexpress.com/benefitsguide or call the number on the back of your American Express Card.**

## TRAVEL-RELATED BENEFITS

### Global Assist Hotline

When you travel more than 100 miles from home, you have 24/7 medical, legal, financial or other select emergency coordination and assistance services, including medical and legal referrals, passport replacement, cash wires and more. You may be responsible for the costs charged by third-party service providers.

To request services and/or assistance please call us at **1-800-333-2639 (US)** and **1-715-343-7977 (Intl)**.

## THE FOLLOWING TRAVEL-RELATED INSURANCE BENEFITS ARE UNDERWRITTEN BY AMEX ASSURANCE COMPANY

### Car Rental Loss and Damage Insurance[1]

Getting into your Rental Vehicle can be the start of a great vacation. When you use your Eligible Card to reserve and pay for the Entire Rental and decline the collision damage waiver at the Rental Company counter, you can be covered for Damage to or Theft of a Rental Vehicle in a Covered Territory, subject to the Coverage Limits.

**What Are The Coverage Limits and Duration?**
- Up to $50,000 for Damage to or Theft of a Rental Vehicle.
- First 30 days for each Rental Agreement.

**What Are Some Important Exclusions and Limitations?[2]**
- Not all vehicle types or rentals are covered.
- Coverage is not available for vehicles rented in Australia, Italy, and New Zealand.
- Coverage is not available for ride-sharing companies that allow individuals to rent their personal vehicles.
- This product provides secondary coverage on all benefits and does not include liability coverage.

For residents of New York State, please refer to the full policy sent separately.

To file a claim for a qualifying event please visit us at **www.americanexpress.com/protectionbenefits** or call us at **1-888-338-1670 (US)** and **1-216-617-2500 (Intl)**.

## RETAIL-RELATED BENEFITS

## THE FOLLOWING RETAIL-RELATED INSURANCE BENEFITS ARE UNDERWRITTEN BY AMEX ASSURANCE COMPANY

### Purchase Protection[1]

Sometimes your favorite new purchase gets stolen or accidentally damaged. But when you use your Eligible Card for Covered Purchases, your Membership can help protect them for up to 90 days from the Covered Purchase date.

**What Are The Coverage Limits?**
- Up to $1,000 per Covered Purchase.
- Up to $500 for all Covered Purchases per occurrence related to a Natural Disaster loss.
- $50,000 per Eligible Card account for each calendar year.

**What Are Some Important Exclusions and Limitations?[2]**
- Purchases that have a limited life spans like food, perfume, light bulbs, or batteries.
- Shipping and handling costs related to the purchase are not eligible for coverage.
- Covered Purchases does not include items like downloadable services, Motorized Devices, and Motorized Device Parts.
- This product provides secondary coverage.

To file a claim for a qualifying event please visit us at **www.americanexpress.com/onlineclaim** or call us at **1-800-228-6855 (US)** and **1-303-273-6498 (Intl)**.

---

[1]Certain restrictions, terms and conditions apply. Coverage is provided by AMEX Assurance Company. For more information about your coverage, please see your Guide to Benefits at **www.americanexpress.com/benefitsguide**.

[2]Not an all-inclusive list of Policy exclusions and limitations. Please see your Guide to Benefits for further details.

Exhibit C - Page 19 of 20

This page intentionally left blank.

Exhibit C - Page 20 of 20